HENRY WHITE et al., Executors, etc., *v.* WILLIAM J. HOW-
ARD et al.

W. B., a resident of the State of Connecticut, died seized of real estate situate in that State and in New York, and leaving a last will and testament, which after providing for certain legacies, etc., gave all the residue of his estate, real and personal, to his executors, and the survivor of them, as joint tenants upon certain specified trusts. By another clause, he authorized said trustees to sell the real estate in Connecticut, and to invest the proceeds in real estate, loans, bonds and stocks located in the New England States or in the State of New York. — *Held,*

1st. The will gave the trustees no power to sell the real estate, of which the testator died seized, situate in New York.

2d. The power of sale, if any was conferred, is discretionary, and until exercised by an actual sale, did not effect a constructive or equitable conversion of the realty into personalty.

3d. The real estate situate in New York, both that of which the testator died seized and that purchased by the trustees, must be regarded as realty; and the validity of the testamentary disposition thereof, and the rights of those claiming it by descent, must be determined by the laws of this State.

A devise to an unincorporated charitable association is void, and is not made valid by the incorporation of such association after the death of the testator.

So, also, a subsequent amendment of its charter, imparts no vitality to a devise to a corporation, not authorized to take at the time of such death.

The trusts in the will of W. B., so far as material, were, in substance, to apply the rents, issues and profits of the trust fund to and for the use and benefit of F. H. B., daughter and only child of testator; and in case she died without issue, to pay certain legacies, and to divide the residue equally between six societies and corporations, four of which were incapable of taking by devise. F. H. B. survived the testator, and died without issue. — *Held,* that a contingent remainder, in four-sixths of the real estate, was undisposed of by the will, which upon the death of the testator, passed to his heirs; that F. H. B., as sole heir, became seized of this remainder, and upon her death, it went to her heirs.

(Argued February 7, 1871; decided September 2, 1871.)

APPEALS from judgment of the late General Term of the first judicial district, affirming judgment entered upon the decision of the court at Special Term, giving construction to the will of William Bostwick, as hereinafter stated.

William Bostwick, a widower, whose residence and domicil were at New Haven, in the State of Connecticut, died there, April 10, 1863, leaving a will, dated May 23, 1860, to which were attached two codicils, dated, respectively, April 1, 1861, and August 16, 1862.

There survived him one child, a daughter, Frances Howard Bostwick, his only heir-at-law and next of kin. She died August 30, 1865, at the age of sixteen years, unmarried, intestate, and without issue. Her only heirs-at-law were, and are, William J. Howard, Emeline F. Thomas, and Mary Ann M. Cocke.

The testator left property, real and personal, in Connecticut and New York, and his executors, under and pursuant to the provisions of his will, both during the lifetime and after the death of his daughter, made further investments of moneys of his estate, in the purchase and improvement of lands in the city of New York.

The said will was proved, as a will of real and personal estate, at the city of New York, on the 18th day of May, 1863; at the city of New Haven, on the sixth day of June, in the same year. Letters testamentary thereupon issued, in both jurisdictions, to the plaintiffs, Henry White and John P. Crosby, who alone duly qualified, and who are sole acting executors of the said will.

After providing for the payment of his debts and funeral expenses, and certain pecuniary bequests, the testator, by the "seventh" article of his will, devised and bequeathed all the residue of his estate, both real and personal, to Henry White, John P. Crosby, and Pelatiah Perit, and the survivors and survivor of them, as joint tenants, in fee simple, upon trust, to receive the rents, income and profits thereof, and during the minority of his daughter, to pay over to her guardian so much of the net proceeds of said rents, income, etc., as should be proper and necessary for her support, maintenance and education; and, after the arrival of his daughter at the age of twenty-one years, to pay over to her, during her natural life, if she desired it, the whole of such net proceeds; or if

she preferred, only such portion thereof as she might desire; and the balance, not paid over to her, to invest (as prescribed by the will); such investment to be added to and form a part of the principal of said trust fund or property.

Then follow various directions, as to the contingent disposition of such trust fund or property, upon the death of the daughter; one of the contingencies occurred, in the death of the daughter, *unmarried, intestate, and without issue,* for which express provision was thus made.

The last clause of the "seventh" article is as follows:

"But if my said child Frances die with no husband, or child, or issue of any child, surviving her, then the whole of said trust fund or property shall be disposed of as follows, namely: $2,000 to the New Haven orphan asylum; $5,000 to the American Sunday School Union in Philadelphia; $5,000 to the society for the promotion of collegiate and theological education at the west; $10,000 to the American Bible Society in New York; and then, whatever remains of said trust fund or property shall be divided equally between the following six societies, namely: The American Tract Society, in New York; the Southern Aid Society; the American and Foreign Christian Union; the American Colonization Society; the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America; the Board of Foreign Missions of the Presbyterian Church in the United States of America."

The will contained a further provision, to the effect that the estate thereby given to any unincorporated society should be conveyed, transferred and paid, in fee simple and forever, to the person who should act as treasurer of such society, to be appropriated to its charitable uses, and under its direction.

"The American Tract Society" is a corporation, chartered by the legislature of the State of New York, May 26, 1841. The original act of incorporation conferred no authority on the Society to take or hold land by devise; but by an amendment of the said act, passed March 31, 1866, it was declared capable of so taking real estate.

" The Southern Aid Society," at the time of the death of the testator, and at the time of the death of his daughter, and until the time of its incorporation, hereinafter mentioned, was a voluntary charitable association of individuals, not incorporated. It was organized as a corporation under the general law of this State for the formation of benevolent, charitable, scientific and missionary societies, November 7, 1866.

" The American and Foreign Christian Union" was organized as a corporation in 1861, under the same general law.

" The American Colonization Society " is a corporation chartered by the legislature of the State of Maryland, in 1836, and is authorized by its charter to take, in fee or otherwise, any lands, etc., by the gift, bargain, sale, devise, or other act of any person.

" The Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America" is, and was, organized as a corporation in 1841, under the statutes of the State of Pennsylvania, with the right to purchase and receive, take and hold lands and all kinds of estates which might be devised, bequeathed or given to them. The original corporate name did not contain the word "domestic;" but, by act of 30th January, 1857, the legislature of the said State changed its corporate name by inserting that word.

In 1866, the legislature of said State authorized the said corporation, to hold and convey real and personal estate, whose income should not exceed $30,000.

" The Board of Foreign Missions of the Presbyterian Church in the United States of America " was organized as a corporation in 1852, under the general law aforesaid of the State of New York, for the incorporation of benevolent, charitable, scientific and missionary societies. By act of the legislature of said State, passed April 12, 1862, the said corporation was declared capable, of taking by devise any real or personal estate for the purposes of said corporation.

Charles A. Kirtland and others, defendants, would have

been the heirs-at-law of the testator, if he had died without issue; and, upon the death of his daughter, they were his nearest living relatives.

This action was brought in the Supreme Court by the plaintiffs' sole acting executors, as aforesaid, to determine the validity and true construction of the said will and its various provisions.

It was tried at Special Term by Hon. JOSIAH SUTHERLAND, Justice, February 20th, 1867, who held and decided:

1. That the validity of the disposition of the personal property of the testator, and the succession to it, under his will or otherwise, must be declared by the courts of Connecticut.

2. That the "American and Foreign Christian Union" and "The Board of Foreign Missions of the Presbyterian Church in the United States of America" can take by devise, and under the will of the testator, are respectively entitled to, and seized of one-sixth part of the said real estate in the city of New York, whether acquired by or through the said investments by the said executors or otherwise.

3. That the defendants, Howard, Thomas, and Cocke, as the only heirs-at-law of Frances Howard Bostwick, deceased, succeeded to and are entitled to the remaining four-sixths of the said real estate in New York, except so far as the same was, by the said justice, adjudged to be personal property in the hands of the said executors.

4. That "The American Tract Society," "The Southern Aid Society," "The American Colonization Society," and "The Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America," cannot take under the will, and are not entitled to any part of said real estate in the city of New York.

5. That the defendants, Charles A. Kirkland and others (standing in the relation of heirs-at-law to the testator, if his daughter be excluded as such), are not, nor is either of them, entitled to any part of the testator's real estate in New York. Judgment was rendered accordingly February 1st, 1869.

The four excluded societies, viz., The American Tract Society, The Southern Aid Society, The American Colonization Society, and the Trustees of the Board of Domestic Missions, etc., etc., appealed from so much of the original judgment as excluded them.

The defendants, Charles A. Kirtland and others (standing in the same relation), appealed from the whole of such judgment.

The judgment was affirmed by the General Term, November 2d, 1870. Judgment of affirmance perfected December 14th, 1870. Such societies and said defendants, Kirtland and others, appealed from the judgment of affirmance.

*J. P. Crosby*, for plaintiffs. The corporate bodies named as residuary trustees, may take the devises as real estate. It is for the people alone, to interdict their holding beyond the amount limited by their charter. (*Bogardus* v. *Tr. Church*, 4 Sand. S. C. Rep., 758; *Andrews* v. *N. Y. Bible and C. P. B. Soc.*, 4 Seldon, note, 563, specially at p. 563; *Vernon* v. *Hills*, 6 Cowen R., 26; also, *Runyan* v. *Coster's Lessee*, 14 Peters R., 131; *Leasure* v. *Hilegas*, 7 Serg. & Rawle., 313.) The comity of international law recognizes foreign corporations. There is no analogy to the strictly local laws governing descent. (*The Silver Lake Bank* v. *North*, 4 John. Ch. Cas., 373; *The Floating Dock Co.* v. *New Jersey Oil Co.*, 3 Duer R., 648; *Mumford* v. *Amer. Life Ins. and Tr. Co.*, p. 482, 4 Comstock R., 463; *Bard* v. *Poole*, 2 Kernan, p. 502; Westlake Inter. Law, § 224; 98 Law Lib., 136, [209], adopting the language of Judge DENIO, of New York.)

*P. F. Sanford*, for defendants, Howard and others, heirs of Frances Howard Bostwick. The succession to the real estate in New York, must be determined by the laws of New York. (*Hosford* v. *Nichols*, 1 Paige, 226; *Holmes* v. *Remsen*, 4 J. Ch. R., 462.) The American Tract Society and the Southern Aid Society, authorized to take by

devise at testator's death, were not aided by acts of 1866. (2 R. S., 57, § 3; *Owens* v. *The Missionary Society*, 14 N. Y., 384; *Downing* v. *Marshall*, 23 N. Y., 283; Laws of 1841, chap. 266, p. 249; Laws of 1866, chap. 310, p. 670.) The clause directing the share of unincorporated societies to be paid to the treasurer, does not impart validity to the devise. (*Leonard* v. *Burr*, 18 N. Y., 107; *Bascom* v. *Albertson*, 34 N. Y., 584.) Foreign corporations not expressly authorized by any statute of this State, cannot take. (*Sherwood* v. *American Bible Society*, 1 Keys, 561; *American Bible Society* v. *Marshall*, 15 Ohio, 537.) The corporations capable of taking, not entitled to whole residue. (*Downing* v. *Marshall*, 23 N. Y., 375; *Van Kleeck* v. *Dutch Church*, 20 Wend., 457.) The testator's daughter took by descent, that portion of the estate not disposed of by the will. (*Van Kleeck* v. *Dutch Church*, 20 Wend., 457; *Van Cortland* v. *Kipp*, 1 Hill, 590.) Under section 62 the reversion vested immediately in the heir-at-law. The legal effect (*so as to constitute such heir-at-law the stock of descent*) is the same, though his own life were the subject of, or determined the duration of the trust estate. (*Anthony* v. *Brower*, 31 How. Pr. R., 129; affirmed, 37 N, Y., 549; *sub nomine Gill* v. *Brower*; *Hoes* v. *Van Hoesen*, 3 B. C., 379, 396.) A legacy may be given, payable after death of legatee, and such legacy vests on the testator's death. (*Sweet* v. *Chase*, 2 Coms., 73; *Terrell* v. *Public Ad.*, 4 Bradf., 545, and cases cited.)

*E. G. Black*, for defendant, Henry D. White administrator of Frances Howard Bostwick. The law of place of testator's domicil governs as to construction, and succession of personal property bequeathed. (Redfield on Wills, part I, ch. 9., § 2, *et seq.;* *Crispin* v. *Doglioni*, 9 Jur. N. S., 653; *Stanley* v. *Bernes*, 3 Hagg, Ecc., 373; *Douglas* v. *Cooper*, 3 My. & K., 378; *Desesbats* v. *Besquier*, 1 Binn., 336; *Parsons* v. *Lyman*, 20 N. Y., 103; *Moultrie* v. *Hunt*, 23 N. Y., 394; Story on Conflict of Laws, § 468.) The child follows the domicil of its father. (*Upton* v. *Northbridge*, 15 Mass.

R., 239; *Hebrom* v. *Marlborough*, 2 Conn. R., 18; *Somerville* v. *Somerville*, 5 Vesey, 750.) And whether such father be living or dead. (*Oxford* v. *Bethany*, 19 Conn. R., 229.) Even the mother could not change the domicil of the minor child. (Denesart Domicil, § 2; case of the Compte de Choiseul; Phillimore on Domicil, ch. 7, § 92.) Certainly not, if the rights of succession to the personal estate could be thereby altered. (*Brown* v. *Lynch*, 2 Brad., 214; *Ex parte* Bartlett, 4 Brad., 221.) Or if there were any suspicion of fraud. (*Pottinger* v. *Wrightman*, 3 Merivale, 67; Story on Conflict of Laws, § 505 c; Phillimore on Domicil, ch. 7, § 60. The domicil of the guardian is not the domicil of the ward. (*Salisbury* v. *Raymond*, 1 Root, 131; *Ex parte* Bartlett, 4 Brad., 221; Pothier, introductory chapter to the Custom of Orleans; Story on Conflict of Laws, § 505 c. and 506; *School Directors* v. *James*, 2 Watts & Sergt., 568; Boullenois Dessert. Ques. 2, p. 53; Story on Conflict of Laws, § 505 c. and § 506, note.) Residence for tuition works no change. (*Inhabitants of Granby* v. *Inhabitants of Amherst*, 7 Mass., 1.) Letters of administration granted here, merely ancillary to foreign administration. (*Cumming* v. *Banks*, 2 Barb., 602; *Churchill* v. *Prescott*, 3 Bradf., 233; *Parsons* v. *Lyman*, 20 N. Y., 103.)

*J. H. Reynolds & G. C. Genet*, for Kirtland, et al. heirs of testator. No intended equitable conversion of the real estate in New York into money. (*Harris* v. *Clark*, 7 N. Y., 249, 260, 261; *Stagg* v. *Jackson*, 1 Comstock, 211, 212; *Martin* v. *Sherman*, 2 Sand. Ch. R., 341; *Allen* v. *Dewitt*, 3 Comst., 282, etc.; *Lovett Ex'rs* v. *Gillender*, 35 N. Y., 617; Law of Trusts, by Tiff. & Ballard, 79; *Polley* v. *Seymour*, 2 You. & Col., 80; *Gott* v. *Cook*, 7 Paige, 534; Jarman on Wills, chap. 20, p. 477, note.) Questions concerning title and disposition of the real estate in New York, must be disposed of by the courts alone of this State. (*Hosford* v. *Nichols*, 1 Paige, 226; *Nicholson* v. *Leavitt*, 4 Sand., 276; *Andrews* v. *Herriott*, 4 Cowen, 508, 527, note; *Cutter* v. *Davenport*, 1 Pick.,

81; *Holmes* v. *Remsen*, 4 John. Ch. R., 462; Story's Conflict of Laws, § 424, and cases in note, § 428, and cases under p. 702, § 445.) The moneys invested by executors in real estate ceased to be personality. (*Polley* v. *Seymour*, 2 You. & Coll., 722; *Brown* v. *Begg*, 7 Vesey, 286.) The American Tract Society cannot take by devise. (*Downing* v. *Marshall*, 23 N. Y., 383.) The foreign corporations cannot so take. (*Rose* v. *Rose Association*, 28 N. Y., 184; *Bank of Augusta* v. *Earle*, 13 Peters U. S. R., 519; *Runyon* v. *Costar*, 14 Peters U. S. R., 122; *Railroad Co.* v. *Kneeland*, 4 Howard, 16; *Boyce* v. *City of St. Louis*, 29 Barb., 655; *Rose* v. *Rose*, 28 N. Y. R., 184.) They have no corporate existence beyond the limits of the State creating them. (Angel and Ames on Corporations, §§ 161, 104; *Dey* v. *Newark India Rubber Co.*, 1 Blach. C. C. R., 628.) Only allowed to transact business not contrary to known policy of State. (*Mumford* v. *American Life Ins. Co.*, 4 N. Y., 482; *Stoney* v. *American Life Ins. and Trust Co.*, 11 Paige, 635.) That portion of residue as to which disposition fails, does not go to other residuary legatees. (*Beekman* v. *The People*, 27 Barb., 281, 282; Same case, 23 N. Y., 312; *Downing* v. *Marshall*, 23 N. Y., 366; *Atty.-Gen.* v. *Davis*, 9 Vesey, 535; *Cheslyn* v. *Cresswell*, 2 Eden, 123; *Archroyd* v. *Smithson*, 1 Brown's Ch. R., 503.) Trusts to unincorporated societies void. (*Bascom* v. *Albertson*, 34 N. Y., 584; *Downing* v. *Marshall*, 23 N. Y., 382; *Yates* v. *Yates*, 9 Barb., 343; *Owens* v. *Miss. So.*, 14 N. Y., 406; *Beekman* v. *The People*, 23 N. Y., 312; *McCaughal* v. *Ryan*, 27 Barb., 395, 398, 409.) Trust for life of Frances H. Bostwick valid, and during its continuance whole estate vested in the trustees. (1 R. S., 729, § 60; *Leggett* v. *Perkins*, 2 Comst., 297; *Amory* v. *Lord*, 5 Selden, 411; *Leggett* v. *Hunter*, 19 N. Y. R., 454; *Stacey* v. *Rice*, 27 Pa., 75; Barratt's Appeal, 46 Pa., 399; *Cleveland* v. *Hallett*, 6 Cush., 407.) The fee did not vest in her. (4 Kent's Com., 216; *Walter* v. *Mulligan*, 45 Pa., 179, 180; *Noyes* v. *Blakeman*, 2 Seld., 578; *Gilman* v. *Redington*, 27 N. Y. R., 15; *Tobias* v. *Ketchum*, 32 N. Y. R., 330; *Brewster* v.

*Striker*, 2 Comst., 19 ; *Striker* v. *Mott*, 28 N. Y., 91 ; *Rieben* v. *White*, 28 How. Pr. R., 320 ; *Theo. Sem. of Aub.* v. *Kellogg*, 16 N. Y. R., 93 ; *McLean* v. *McDonald*, 2 Barb., 534 ; *Judson* v. *Gibbons*, 5 Wend., 224 ; *Vale* v. *Vale*, 4 Paige, 317 ; *Bradley* v. *Amidon*, 10 Paige, 235.) The reversion did not vest until the termination of this estate by her death. (45 Pa., 179, 180 ; *Boynton* v. *Hoyt*, 1 Denio, 57 ; *Harris* v. *Clark*, 3 Seld., 259 ; *Savage* v. *Burnham*, 17 N. Y., 574 ; *Everitt* v. *Everitt*, 29 N. Y., 71 ; *De Barrante* v. *Gott*, 6 Barb., 493.) If the fee vested in F. H. B., it would have destroyed all other estates. (4 Kent's Com., 99, 100 ; 3 Preston on Contr., 182, 261 ; *Taylor* v. *Gould*, 10 Barb., 401 ; 2 Wash on Real Prop., p. 394 §§ 13, 14.) No ultimate estate remains in grantor of fee. (*Van Rensselaer* v. *Dennisson*, 35 N. Y., 399 ; *Van Rensselaer* v. *Barringer*, 39 N. Y., 9 ; *Briggs* v. *Davis*, 21 N. Y. R., 576.) This was a valid contingent remainder. (*Striker* v. *Mott*, 28 N. Y. R., 82 ; 1 R. S., 722, §§ 13, 28.) While contingents remainder outstanding, the fee does not vest. (*Wendell* v. *Crandall*, 1 N. Y., 401 ; Same case, 1 Denio, 9 ; *Edwards* v. *Varrick*, 5 Denio, 668 ; *Moore* v. *Little*, 40 Barb., 488 ; *Tyson* v. *Blake*, 22 N. Y., 563 ; *Norris* v. *Beyea*, 13 N. Y., 272, 286 ; *Sheridan* v. *House*, 4 Keyes, 569 ; *Campbell* v. *Raurdon*, 18 N. Y., 415 ; *Roberson* v. *Wilson*, 38 N. H., 48 ; *Taylor* v. *Gould*, 10 Barb., 388 ; *Olney* v. *Hall*, 21 Pick, 311 ; *Snow* v. *Snow*, 49 Maine R., 159 ; *Hibbard* v. *Rawson*, 4 Gray, 242 ; *Brown* v. *Lawrence*, 3 Cush. Mass., 390 ; *Leonard* v. *Burr*, 18 N. Y., 107.) The testator disposed of whole estate and his heirs took nothing. (*Hawkins* v. *Chappell*, 1 Atk., 622 ; *Gibson* v. *Roger Ambler*, 94–96 ; *Hill* v. *Bishop of London*, 1 Atk., 620 ; *Briggs* v. *Davis*, 21 N. Y., 576.) Where trustees have fulfilled all trusts capable of being fulfilled, a reversion or resulting trust arises in favor of testator's heirs. (*Cox* v. *Parker*, 22 Beavan's R., 168 ; *Burgess* v. *Wheat.* 1 Eden, 177 ; *Powell* v. *Merrett*, 22 L. J. C., 408 ; *Bishop* v. *Curtis*, 17 Jurist, 23 ; 4 Kent's Com., 425.) The gifts over, show testator did not intend the estate should descend to his

Statement of case.

daughters. (*Smith* v. *Bell*, 6 Peters, U. S. R., 68; *Anderson* v. *Jackson*, 16 John. R., 399.)

*H. C. Van Vorst*, for defendants R. G. Beardslee and others, heirs-at-law of the testator (if daughter is excluded). The trustees under the will were vested with title to real estate in New York. (R. S., 5th ed., vol. 3, p. 16, § 55, sub. 3; *McLean* v. *McDonald*, 2 Barb., 934; *Irving* v. *De Kay*, 9 Paige, 621, affirmed 5 Denio, 646.) The person for whose benefit the trust is created takes no estate or interest in the lands. (R. S., vol. 3, p. 21, § 79; *Noyes* v. *Blakeman and others*, 2 Seld., 567; *Boynton* v. *Hoyt*, 1 Denio, 53; *Hawley* v. *James*, 16 Wend., 61.) There was a clear devise of the rents and profits of the lands, and such is a devise of the land itself. (*Bradley* v. *Amidon*, 10 Paige, 235; 4 Kent's Com., 526; *Craig* v. *Craig*, 3 Barb. Ch., 77; *Vail* v. *Vail*, 4 Paige, 317.) Where the purposes of the trust ceased, the estate vested in heirs-at-law of testator. (*Parks* v. *Parks*, 9 Paige, 107.) The heirs so to take, are those who are heirs at the termination of the trusts. (*Nicoll* v. *Walworth*, 4 Denio, 385; *Sterncher* v. *Dickinson*, 9 Barb., 506; *Bellinger* v. *Shafer*, 2 Sandf. Ch., 293; R. S., 5th ed., vol. 3, p. 12, § 29.)

*A. S. Edwards*, for the Southern Aid Society. If estate is distributed as personalty, the law of Connecticut will govern, and the intent of the testator be carried out. (*Am. Bible Soc.* v. *Wetmore*, 17 Conn., 182; *Treat's Appeal*, 30 id., 113.) To carry will into effect, land will be regarded as converted into personalty. (*The Phelps Will Case*, 28 Barb., 121, 146; S. C., affirmed 23 N. Y., 69, 76.)

*G. N. Titus*, for the American Tract Society and the American Colonization Society. Foreign corporations can take by bequest. (*Sherwood* v. *Am. Bible Soc.*. 1 Keyes, 561; *Williams* v. *Williams*, 4 Seld., 530; *McDonough* v. *Murdock*, 15 How. U. S., 367; *Brewster, etc.*, v. *McCall's Devisees*, 15 Conn., 274; *Burbank* v. *Whitney*, 24 Pick., 146.) All the

corporations are entitled to that portion adjudged to be personalty. (*Moses* v. *Murgatroyd*, 1 Johns. Ch., 119; *Shepherd* v. *McEvers*, 4 id., 136.) The contingent interests of the residuary legatees, vested in rights at death of testator. (Williams on Executors, 2 Am. ed., 638, 868; *Matter of Trustees of N. Y. P. E. Pub. School*, 31 N. Y., 589.) To them the executors are accountable for the personal property, in whatever form invested. (Williams on Executors, 11, 76; *Shotwell's Ex'rs* v. *Mott*, 2 Sandf. Ch., 57; 1 Story's Eq., §§ 477, 483–485, 505, 674; *Averill* v. *Locks*, 6 Barb., 120.) There was no equitable conversion of the personalty into lands. (1 Jarman on Wills, 4th Am. ed., 483, note 1; *Harris* v. *Clark*, 3 Seld., 242, 261; 2 Story's Eq. Jur., § 1214.) The statute of 1813 excepted corporations as competent devisees, without prohibiting them from taking by devise for a charitable use. (2 Kent's Com., 285, 286; *Theo. Sem. of Auburn* v. *Childs*, 4 Paige, 474; 9 Cow., 451; *Thompson* v. *Troope*, 24 Penn., 474.) The statute of 1830 leaves corporations, to whom express power to take by devise has not been given, in the same condition as if that statute had not been passed; but it does not prohibit them from taking by devise for a charitable use. (*Wright* v. *Trustees M. E. Ch.*, 1 Hoff. Ch., 230.) The words, "expressly authorized by its charter to take by devise," means only that "corporations, as such, cannot take in that manner, as they can by purchase, for the purposes of their organization." (23 N. Y., 388.) It does not require authority under a statute of this State. A forced construction will not be adopted to extend operation of a statute. (*Waller* v. *Harris*, 20 Wend., 561; Dwarr. on Stat., 703.) A foreign corporation can take by purchase, mortgage or devise, when consistent with its charter, and not prohibited by positive law. (2 Kent's Com., 283, note *b*; *Silver Lake Bank* v. *North*, 4 Johns. Ch., 370; *Lathrop* v. *Com. Bank of Sciota*, 8 Dana, 126; *Bard* v. *Poole*, 2 Kern., 495, 505; *Runyon* v. *Coster's Lessees*, 14 Pet., 129; *Mumford* v. *Am. Life Ins. and Trust Co.*, 4 Comst., 464; *Bartlett* v. *Nye and others*, 4 Metc., 378; *Burbank* v. *Whitney*, 24 Pick., 146.) The exercise of this

power has not been prohibited by positive law of this State. (*Att'y-Gen.* v. *Stewart,* 2 Mer., 143, 161; 1 Bl. Com., 108; *Lathrop* v. *Com. Bank of S.,* 8 Dana, 126; 2 Kent's Com., 282, 283; 9 Cow., 452; *Williams* v. *Williams,* 5 Seld., 546; 1 Hoff. Ch., 239.) The law of international comity demands, that this Maryland corporation should be permitted to take the land devised to it. (*Bank of Augusta* v. *Earle,* 13 Pet. U. S., 520, 588, 591; Angell & Ames on Corp., 161; *Silver Lake Bank* v. *North,* 4 Johns. Ch., 370; *Bard* v. *Poole,* 12 N. Y. [2 Kern.], 495; *Merrick* v. *Van Santvoord,* 34 N. Y., 208; *Mumford* v. *American Life Insurance Co.,* 4 Comst., 482; *Runyon* v. *Coster,* 4 Pet., 22; *Merrick* v. *Van Santvoord,* 34 N. Y., 216.) It is a person, within the meaning of the statute of wills, capable by law of holding real estate. (*U. S.* v. *Amedy,* 11 Wheat., 392; *Louisville R. R. Co.* v. *Letson,* 2 How. U. S., 558; *Covington Drawbridge Co.* v. *Shepherd,* 20 id., 232; 1 R. S., 719, §§ 8, 10.) It has express authority, by its charter, to take lands by devise in any part of the United States; and, under its charter, it may take here by devise, as a domestic corporation might or could, under a like charter from this State. (*Runyon* v. *Coster,* 14 Pet. U. S., 122; *Silver Lake Bank* v. *North,* 4 Johns. Ch., 373; *Bard* v. *Poole,* 12 N. Y., 495; *Merrick* v. *Van Santvoord,* 34 id., 208; *Thompson* v. *Troope,* 24 Penn. St., 474.) The residuary gift is not invalidated, by the laws of this State relating to accumulations of personal property, uses and trusts, or perpetuities. (*Shotwell's Ex'rs* v. *Mott,* 2 Sandf. Ch., 46; *Potter* v. *Chapin,* 6 Paige, 649; *Dutch Ch., etc.,* v. *Mott,* 7 id., 77; *Banks* v. *Phelan,* 4 Barb., 89; *Sherwood* v. *Am. Bible Soc.,* 1 Keyes, 561; *Williams* v. *Williams,* 4 Seld., 558.) The gift was made to a trustee, competent to take and hold for the charitable use and purpose indicated in its charter, and is valid. (*Trustees of Philips Acad.* v. *King,* 12 Mass., 546; *Burbank* v. *Whitney,* 24 Pick., 146; *Bartlett* v. *Nye,* 4 Metc., 378; *Vedal* v. *Gerard,* 2 How. U. S., 187; *Ex'rs of Burr* v. *Smith,* 7 Vt., 241; 1 Keyes, 561; Hill on Trustees, 3 Am. ed., 191, note 1.) The doctrine of equitable conversion applies, and

the land owned by testator at death should be regarded as personal property. (*Phelps* v. *Phelps*, 28 Barb., 121; *Phelps' Ex'r* v. *Pond*, 23 N. Y., 69; *Mower* v. *Orr*, 7 Hare, 473; *Grievson* v. *Kirsopp*, 2 Keen, 653.) If sale is necessary to execute trust, authority to sell will be presumed. (2 Spence Eq. Jur., 366; Hill on Trustees, 471; *Winston* v. *Jones*, 6 Ala., N. S., 550; *Meakings* v. *Cromwell*, 1 Seld., 136.) The devise to the American Tract Society was valid to divest title of the heir. (*Inglis* v. *Trustees, etc.*, 3 Pet., 99.) The title of the society was only defeasible on action by the State. (*Runyon* v. *Costar's Lessee*, 14 Pet., 122.) Under the act of 1866, it acquired full title. (*Curtis* v. *Leavitt*, 15 N. Y., 85, 152, 254; *Central Bank* v. *Empire Stone Dressing Co.*, 20 Barb., 24; *Washburn* v. *Franklin*, 35 id., 599; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y., 61.)

*J. Westervelt*, for the Trustees of the Board of Domestic Missions. Defendant is a corporation duly organized under laws of Pennsylvania, with authority to take by devise. (Statutes of Pa., vol. 3, ed. of 1810, ch. 1536; vol. 5, ch. 3065.) It has capacity to take in this estate. (*Sherwood* v. *Am. Bible Soc.*, 1 Keyes, 561; *Bank of Augusta* v. *Earle*, 13 Peters U. S., 520, 588, 591; Angell & Ames on Corporations, 161; *Silver Lake Bank* v. *North*, 4 Johns. Ch., 373; *Bard* v. *Poole*, 11 N. Y., 2 Kern., 495; *Merrick* v. *Van Santvoord*, 34 N. Y., 208; *Mumford* v. *Am. Life Ins. Co.*, 4 Comst., 482; *Runyon* v. *Coster*, 14 Peters U. S., p. 122; *Silver Lake Bank* v. *North*, 4 Johns. Ch., 373; *Bard* v. *Poole*, 12 N. Y., 495; *Merrick* v. *Van Santvoord*, 34 N. Y., 208; *Thompson* v. *Troope*, 24 Penn. State R., 474; *Williams* v. *Williams*, 4 Seld., 525, 554; *Owens* v. *Miss. Soc.*, 4 Kern., 380, 405; *Leonard* v. *Burr*, 18 N. Y., 107; *Beekman* v. *Bonsor*, 23 N. Y., 298, 310; *Downing* v. *Marshall*, 23 N. Y., 366; *P. E. Pub. School*, 31 N. Y., 574.) The question as to limitation in charter cannot be raised collaterally, only by proceedings taken by State. (Angell & Ames on Corporations, § 777, and cases in note; *Bogardus* v. *Trinity Church*, 4

Sandf. Ch. R., 758 ; *Harpending* v. *Dutch Church*, 16 Peters U. S., 492, 493 ; *Vernon Society* v. *Hills*, 6 Cow., 23 ; *Humbert* v. *Trinity Church*, 24 Wend., 630 ; *People* v. *Mauran*, 6 Denio, 401 ; *Runyon* v. *Coster*, 14 Peters U. S., 122.)

*J. Westervelt*, for the Board of Foreign Missions. A corporation may exist and have power under several distinct charters. (*U. S. Bank* v. *Dandridge*, 12 Wheat., 71 ; Angell & Ames on Corporations, § 85 ; *Rex* v. *Cambridge*, 3 Burr, 1656, 1661.)

*J. W. Edmonds*, for the American and Foreign Christian Union. The whole residue goes to the two societies (authorized to take) as joint tenants. (2 Kent's Com., 350 ; *Campbell* v. *Campbell*, 4 Bro. R., 15 ; Preston on Legacies, 239 ; *Shore* v. *Billingsley*, 1 Vern., 482 ; *Whitmore* v. *Trelawney*, 6 Ves., 129 ; *Ryder* v. *Sweet*, 2 Amb., 175 ; *Ryder* v. *Ryder*, 2 P. W., 331 ; *Campbell* v. *Campbell*, 4 Bro. C. C., 17 ; *Blinkhorn* v. *Feart*, 2 Ves. S., 8, 30 ; *Boywell* v. *Dry*, 1 P. W., 700 ; *Jackson* v. *Jackson*, 9 Ves., 597 ; *Barton* v. *Stokely*, 1 Vern., 482 ; *Craig* v. *Willis*, 2 P. W., 529 ; *Willing* v. *Baine*, 3 P. W., 114 ; *Page* v. *Page*, 2 P. W., 488 ; *Trewer* v. *Relf*, 2 Bro. C. C., 219 ; *Stuart* v. *Bruce*, 3 Ves., 633 ; *Morley* v. *Bird*, 3 Ves., 629 ; *Crooke* v. *De Vandes*, 9 Ves., 204 ; *Humphrey* v. *Taylor*, 2 Ves., 648 ; *Dorset* v. *Sweet*, Amb., 175 ; *Delmare* v. *Rebells*, 1 Ves. Jr., 415 ; *Perry* v. *Clay*, 2 Bro. C. C., 187 ; *Baffar* v. *Bradford*, 2 Atk., 221 ; *Armstrong* v. *Eldredge*, 3 Bro. C. C., 216 ; *Scott* v. *Bargeman*, 2 P. W., 68 ; *Webster* v. *Webster*, 2 P. W., 347 ; *Baluzuer* v. *Johnson*, 3 Bro. C. C., 457 ; *Crooke* v. *De Vandes*, 9 Ves., 204, 11 Ves., 330 ; *Butler* v. *Stratton*, 3 Bro. C. C., 863 ; *Blacker* v. *Webb*, 2 P. W., 385 ; *Phillips* v. *Garth*, 3 Bro. C. C., 68 ; *Gardner* v. *Printess*, 2 Barb., 89 ; *King* v. *Strong*, 9 Paige, 94 ; *Banks* v. *Phelan*, 4 Barb., 80.) The intent of the testator must be carried into effect. (*Van Kleek* v. *Dutch Church*, 20 Wend., 472 ; *Tucker* v. *Tucker*, 5 N. Y., 419 ; *Rathbun* v. *Dyckman*, 3 Paige, 27 ;

*Earl* v. *Green*, 1 Johns., Ch. R., 494; *Bowers* v. *Smith*, 10 Paige, 196; *Parks* v. *Parks*, 9 Paige, 120; 4 Kent's Com., part 6th, ch. 68, 534, 654; 1 Redfield on Wills, 432, § 17; *Jackson* v. *Merrill*, 6 Johns., 185; *Jackson* v. *Babcock*, 12 Johns., 389.) The devise to the four societies is void. (1 Jar. on Wills, 3 Am. ed., 293, 305; *Jackson* v. *Staats*, 11 Johns., 337; *Jackson* v. *Merrill*, 6 Johns., 185.) And the residuum goes, not to the heirs intended to be disinherited, but to the residuary legatees intended to be endowed. (4 Kent's Com., 542, 666; *Earl* v. *Grim*, 1 Johns. Ch. R., 494; *Corrigan* v. *Kiernan*, 1 Bradf., 208; *Craig* v. *Craig*, 3 Barb. Ch., 76.)

GROVER, J. The testator, William Bostwick, at the time of his death, in April, 1863, was a resident of the State of Connecticut, and had been, for a number of years prior thereto. The validity of the bequests of his personal property, and all questions of succession thereto, or rights therein, must be determined under the laws of that State, and by the courts of that State, when the property, or those having the possession and control thereof, are within its jurisdiction. (*Parsons* v. *Lyman*, 20 N. Y., 103; *Moultrie* v. *Hunt*, 23 id., 394; Story on Conflict of Laws, § 468.) In addition to his personal property and real estate situated in Connecticut, the testator, at the time of his decease, was seized of real estate situated in the city of New York, of great value. The validity of the devise of the latter property, and all questions relating to the title, must be determined by the laws and courts of New York, irrespective of the domicil of the testator. (*Hosford* v. *Nichols*, 1 Paige, 220; Story's Conflict of Laws, §§ 424, 428, 445; 4 Kent's Com., 513.) The testator, after giving several legacies by the previous clauses of his will, by the seventh clause gave all the rest, residue and remainder of his property, both real and personal, wherever situate, to Henry White, John P. Crosby, and Pelatiah Perit, and the survivor of them, as joint tenants, in fee simple, upon certain specified trusts in favor of his daughter Frances, an infant, and her children, should she

leave any her surviving, and the descendants of any child, if any, whose parent died during the life of his daughter and her husband, if any, surviving her; and upon the further trust, in case of the death of his daughter, leaving no child or descendant of any child, or husband, her surviving (an event which has actually happened), to pay certain specified legacies to various charitable societies, and then divide whatever remained of the trust estate equally between the following six societies, namely: The Southern Aid Society; the American Tract Society; the American and Foreign Christian Union; the American Colonization Society; the Trustees of the Board of Domestic Missions, of the General Assembly of the Presbyterian Church of the United States; and the Board of Foreign Missions of the same church. The personal estate was more than sufficient to pay all the specific legacies given by the will. The first question to be determined is, whether any or all of these societies, had capacity to take real estate in New York by devise. As several of the societies claim a capacity so to take, upon grounds and principles different from others, it will be necessary to examine the question as to several separately. As the Southern Aid Society differs in this respect materially from all the others, it will be proper to consider the question as to that society first. This was a voluntary, unincorporated charitable association, engaged in aiding indigent evangelical churches and ministers in the southern section of the Union, prior to 1861. Whether it continued in existence as a society after that period, and to the time of the death of the testator, and until its incorporation under the general statute of the State, was a controverted question upon the trial; but the justice who tried the cause found, in substance, that it did so continue. That finding is conclusive upon this court. A voluntary association for charitable purpurposes cannot, under the law of this State, take a legacy given to it. (*Sherwood* v. *Amer. Bible Society and others*, 1 Keyes, 561.) If incapable of taking a legacy, it is clear that it has no capacity to take by devise. The counsel for the society insists, that by the terms of the will, all the real estate

of the testator, must be regarded as constructively converted into personal, and if so converted, then it should be disposed of by the law of Connecticut, where the testator had his domicil, under the law of which (as the counsel insists), such associations can take bequests of personal property. The question, whether the real estate, by the provisions of the will, was constructively converted into personal, is important, as its determination affects the rights of some of the other parties, among whom the residue is to be divided by its terms. The will empowers the trustees in their discretion, to sell and convey the real estate in Connecticut, and invest the proceeds in certain specified personal securities, or in real estate situate in certain States named, among which is New York. It contains no express authority to sell the New York real estate. The counsel for the aid society insists, that they had implied authority to sell such real estate, from the tenth clause of the will. The material part of that clause affecting this question is as follows : I hereby authorize and empower the trustees, who may hold any real estate in the State of Connecticut, or any personal estate in the State of Connecticut or elewhere under this will, to sell and dispose of the same, or any part or parts thereof, and to invest the avails at their discretion in certain specified personal securities, or in real estate in New York, or any of the New England States. This is substantially repeated in the same article of the will. It is insisted that the testator, from the length of time the trust would probably continue, must have intended that the trustees should have full power, to effect such changes, as future events might show would be advantageous and desirable, including the power to sell and convey any or all of the real estate. If such was his intention, it is difficult to see why it was not expressed in the will. The instrument itself shows, that it was carefully prepared with adequate professional aid. The testator knew that by far the larger portion of his real estate was located in New York, and by expressly conferring power upon the trustees to sell the comparatively small portion in Connecticut, and remaining silent as to that in New York,

he showed that he did not intend that the latter should be sold. Whether he intended, that the trustees should have power, to sell any real estate they might purchase in pursuance of the will, is not a very material question ; but so far as it can affect the rights of the aid society, in respect to the real estate purchased by the trustees in New York, will be considered hereafter. But if this construction of the will is erroneous, and it should be held, that the will gave the trustees a discretionary power, of selling the real estate in New York, it would not aid the society in any respect. To constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of and obligatory upon the trustees to sell it in any event. Such conversion rests upon the principle, that equity considers that as done which ought to have been done. A mere discretionary power of selling produces no such result. (Jarman on Wills, vol. 1, 523, 4 and 5; *Wright* v. *Trustees*, 1 Hoff., ch. 202, and authorities cited at 219; 2 Kent's Com., 11th ed., 230, note c.; 2 Story's Equity, sec. 1219 ; *Stagg* v. *Jackson*, 1 Coms., 206.) There can be no pretence of any conversion of the New York real estate, under the rule in the present case. The real estate, situated in New York, purchased by the trustees, and in part paid for from the personal property, must be regarded as real estate. The trustees were expressly empowered by the will, to convert the personal into real estate in New York, so far as they deemed expedient ; and so far as they have done so, the property must be treated as real estate. (1 Jarman on Wills, 538, 539.) It follows that the Southern Aid Society can take no interest in any of the New York real estate. The testator, by the thirteenth clause of his will, gave to the person, who should at the time the property was to be conveyed, act as treasurer of any society, which he had made an object of his bounty, in case such society was unincorporated, the portion that he by previous clauses had given to such society, to be appropriated to the charitable uses and purposes of such society, and under its direction. This devise is invalid, so far as the person acting as treasurer of the aid

society is concerned. The person who is to take the property as trustee is sufficiently ascertained, but the beneficiaries are not ascertained or ascertainable with sufficient certainty to sustain, or in any way enforce the trust. They are indigent evangelical churches and ministers in the southern section of the Union. (*Bascom* v. *Albertson*, 34 N. Y., 584.) The incorporation of the society in 1866 does not affect the question. The property had become vested in others prior to that time, and their rights could not be affected thereby. The American Colonization Society claims the one-sixth of the property under the will. This society was incorporated in 1836, by an act of the legislature of Maryland, by which it was authorized, to take lands by devise, and to sell and dispose of such lands as the society should determine, to be most conducive to the objects of the society, namely, the colonizing of the free people of color of this country in Africa. The principal question to be determined, in regard to this society is, whether it can take land in this State by devise. We have already seen that this question must be determined solely by the law of this State. That it can take personal property by bequest, has been determined by this court. (*Sherwood* v. *The American Bible Society and others*, 1 Keyes, 561.) By the statute of this State concerning wills, passed in 1813 (1 R. L., 364), all persons (other than bodies politic and corporate) were permitted to take lands by devise, and might take to or for any lawful purpose whatsoever, without restraint. The exclusion of bodies politic and corporate from taking lands by devise, was the law of the State until the Revised Statutes took effect, and applied to all corporations of our own and other States and countries, unless the legislature, for special reasons, authorized a particular corporation so to take. This was the settled policy of the State. Such being the law and policy of the State at the time of the passage of the Revised Statutes, we find, that by the first section of the statute of wills therein contained (2 R. S., 57), all persons, with the exceptions therein specified, were empowered to dispose of their real estate by will. Section 2 of the act

defines real estate for this purpose. Section 3 provides, that such devise may be made to every person capable by law of holding real estate ; but no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter, or by statute, to take by devise. What modification of the law is here indicated ? By the act of 1813, bodies politic and corporate are excepted from the persons who may take by devise. By section 3 of the present statute of wills, all persons capable by law, to hold real estate, are authorized so to take, but providing that no devise to a corporation shall be valid, unless such corporation, by its charter or by statute, be expressly authorized so to take. Had the legislature, while the act of 1813 was in force, granted a charter to a corporation, and had therein enacted, that such corporation might take real estate by devise, can there be a doubt, that such a provision would have effected a repeal of the act as to such corporation? Or had the legislature, by a subsequent statute, enacted that one or any number of designated existing corporations, might take land by devise, such act would, as to such corporations, have repealed the exception in the act of 1813 by implication. Section 3 of the present statute, has the same effect precisely, upon all corporations not expressly authorized by charter or statute to take by devise, as the exception in the act of 1813 had upon all existing corporations, and all thereafter created, unless the latter were expressly authorized by their charter to take ; and we have seen that, as to both classes, a subsequent statute, expressly authorizing any designated corporations to take land under a will, would by implication, have repealed the section as to them. The only modification of the law intended by the change in section 3, was to save the right of existing corporations, authorized by their charter or statute, to take by devise, if any such there were ; for those incorporated subsequent to its passage, were as effectually deprived thereby, of the capacity to take by devise, as those incorporated subsequent to the act of 1813 were by the exception. Neither could take, unless expressly authorized by statute or charter, in which event both could take, unless some

distinction exists, between a statute and charter of a corporation
in this respect, as used in the section.    That the authority con-
ferred by statute referred to in section 3, means a statute of this
State only, is clear.    That a statute of another State, conferring
power upon a New York corporation to take land by devise,
would be effectual to enable it so to take in the State pass-
ing it, is clear ; but it is equally plain, that it could not affect
its capacity to take land located in New York by devise.
This shows that the word statute, as used in section 3, means
a statute of New York.    It will hardly be insisted that a
statute of another State, conferring power upon a corporation
created by itself, to take land by devise in New York, will
enable it so to take, while a similar statute conferring the same
power upon a New York corporation will have no such effect.
But it is claimed, that by the true construction of section 3,
power is given to all corporations, whose charters authorize
them to take, by devise, to take in that manner in this State,
irrespective of the government from which the charter is
obtained.    In other words, that section 3 authorizes all cor-
porations to take lands in this State under a will, whose char-
ters confer a capacity so to take.    Creating or chartering
corporations involves an exercise of the legislative power.
They may be created by a particular statute, granting the
charter or organized by virtue of general statutes prescribing
the mode, specifying the powers and privileges to be enjoyed.
In either mode the corporation is, in a legal sense, created by
statute ; and where section 3 provides, that no devise to a
corporation shall be valid, unless such corporation be expressly
authorized by its charter, or by statute, to take by devise, it
is equally clear that such charters only were intended, as were
granted by a statute of this State, or organized under a general
statute of the State, as it is that by the words by statute, a
statute of the State was intended.    Any other construction
would work a complete revolution of the policy of the State.
That policy, as indicated by its whole legislation, is to
exclude corporations generally from taking by devise.    The
legislature at all times have possessed the power, to except

such corporations as it deemed proper from its operations; and of late years have exercised it with great liberality, in favor of corporations organized for charitable purposes. But there is no indication of a design, to abandon the general policy of the State, by permitting other governments to determine, what corporations might take and hold lands in this State by devise, under the construction contended for by the counsel for the colonization society. Any corporation, to which the privilege of taking land by devise was refused by our legislature, might acquire that privilege by procuring and accepting a charter from another State conferring it. This would defeat the plain intention of section 3, which was to exclude all corporations from that right, except such as our legislature permitted for special reasons to enjoy it. It follows that the colonization society, can take no interest in the New York real estate under the will of the testator. The question, whether the real estate was by the provisions of the will converted into personal, has been already disposed of. The counsel insists, that as to the colonization society, such portion of the real estate in New York, purchased by the trustees, as was paid for by them from the personal estate, should be regarded and disposed of as personal, and this society declared, entitled to a share therein under the will. His position is, that the right to that portion of the personal property given to the society by the will, vested upon the death of the testator, and although contingent at that time, by the events that have since happened, the right has become absolute, and that it could not be impaired, while contingent, by a change in the character of the property made by the trustees. But this entirely overlooks one of the contingencies upon which the property, as personal property, was given to the society, namely, that the trust property should not, before the occurrence of the event, upon the happening of which the society was to take, be invested by the trustees in real estate, pursuant to the power given them by the will. The authorities (Williams on Exrs., 1176, and others cited) relate to cases, where executor's guardians of minors commit-

tees of lunatics, etc., have invested the personal property in real estate. In these cases it has been rightly held, that by such unauthorized investments, no change in the nature of the property was effected, so far as the right of succession was concerned. They have no application to the present case, where the investment was made under the power conferred by the will. In such cases we have seen, that after the investment is in fact made, the nature of the property is changed, and that the heir, instead of the personal representatives, are entitled to it. International comity has nothing to do with titles to real estate. They are regulated exclusively by the government where the real estate is situated. These views dispose also of the claims of the defendant, the trustees of the board of Domestic Missions of the General Assembly of the Presbyterian Church of the United States. That is a corporation formed under the laws of Pennsylvania, having power by its charter to take real estate by devise; but there is no law of this State authorizing it so to take. The defendant, the American Tract Society, is a corporation under chapter 266, p. 249, of the Laws of 1841. That act gives the corporation no power to take by devise, and consequently, the devise of real estate to it is invalid, by the express provisions of section 3 of the statute of wills. The amendment of its charter by the act of March 31st, 1866, authorizing the corporation to take by devise, cannot affect its rights in the present case, as the testator and his daughter died prior to that time; and all the real estate not effectually disposed of by the will, vested in some of the persons claiming as heirs prior thereto. The position that the State, by subsequent legislation, could give validity to this void devise, is entirely fallacious. The property vested in heirs can no more be taken from them, and bestowed upon others, by legislation, than that of any other class; and the act in question makes no such attempt. It will be proper next to determine, whether the heirs of the testator, or those of his daughter Frances, are entitled to that part of the real estate, not disposed of by the will; as, in case it shall be held that the latter are entitled, it

will be unnecessary to examine the questions raised, as to the rights of the two corporations, held by the Supreme Court, entitled each to one-sixth of the real estate in the lands purchased, as the heirs of the daughter have not appealed from the judgment. I understand the position of the counsel of the heirs of the testator to be this: That, under the will, the estate vested in the trustees during the life of the daughter, in trust for her, and upon her death, upon the further trust to convey to her husband and children, etc., as provided by the will, and that during her entire life, it was contingent whether she would leave her surviving, any person or persons entitled to the estate under this part of the will, and that until that time, it was uncertain, whether the entire estate was disposed of by the will or not, and that therefore, no legal estate did or could vest in the daughter. It is an elementary principle, that seizin in the ancestor is essential to a transmission of the estate from him to his heir. If it be true that there was no seizin of the estate by the daughter, no title can be derived from her as her heir. It is equally clear, that if she was seized, the title vested in her heirs upon her death. We have already seen, that in the events that have actually happened, four-sixths of the real estate were not disposed of by the will. Whether during the period of the contingency of the events upon which this result depended, this portion of the estate vested in the trustees or was in abeyance, must be determined by the provisions of the statute (1 R. S., 729, 730), or if it cannot be so determined by the common law, section 60 of the statute provides, that every express trust, valid as such in its creation, except as therein otherwise provided, shall vest the whole estate in the trustees, in law and equity, subject only to the execution of the trust; that the persons for whose benefit the trust is created, shall take no estate or interest in the land, but may enforce the performance of the trust in equity. Section 61 provides, that the preceding section shall not prevent any person creating a trust, from declaring to whom the lands to which the trust relates shall belong, in the event of the failure or termination of the trust; nor shall it prevent

him from granting or devising such lands, subject to the execution of the trust. Every such grantee or devisee shall have a legal estate in the lands, as against all persons, except the trustees and those lawfully claiming under them. Section 62 provides, that when an express trust is created, every estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to the person creating the trust, or his heirs, as a legal estate. A remainder in four-sixths of the real estate, contingent upon the death of the daughter, leaving no descendant her surviving, was not embraced in the trust, as the devisees were incapable of taking, and this remainder was not disposed of by the will. By the provisions of section 62, this remainder, upon the death of the testator, vested in his heirs. His daughter was his sole heir. She therefore became seized of this remainder as heir of her father, and being seized, upon her death, it goes to her heirs. Those who would have been heirs of the testator, had he survived his daughter, are entitled to no interest in the land. The heirs of the daughter have not appealed from the judgment. They are the only parties prejudiced by that provision of the judgment, declaring that the real estate purchased by the trustees in New York must, so far as the purchase-money was paid from the personal estate, be regarded and disposed of as personal property, so far as their rights as heirs are concerned. This provision of the judgment cannot be corrected by this court. Why it should have been so held, in respect to the rights of the heirs and some of the other parties, and not as to all, I am unable to determine; but as the only parties prejudiced by holding, that it should as to some of the parties, be disposed of as personal property, did not except to the ruling, and have not appealed, the judgment in this respect must be affirmed; and the Board of Foreign Missions of the Presbyterian Church in the United States, and the American and Foreign Christian Union, are entitled to all that has been awarded to them by the judgment. The two defendants last named have not appealed from the judgment, and cannot therefore, ask for any modification thereof favorable to them.

I have deemed it unnecessary to notice the suggestions of counsel, as to the remoteness of the relationship of the persons claiming as heirs, or the anxiety of the testator, apparent from the will, that this property, in the events that have happened, should be bestowed upon the charitable objects specified in the will, as such considerations are entitled to no weight upon the questions to be determined. So far as competent persons make disposition of their property by will, pursuant to the rules of law, the disposition is valid and will be upheld. So far as they fail to make such disposition, the heirs and next of kin are, by law, entitled to the property; and any intention of the deceased, however ascertained, can have no effect upon their legal rights. The judgment appealed from must be affirmed, with costs to the respondents, to be paid by the plaintiffs out of the estate. From the allowances made by the court below, I think the appellants have been sufficiently compensated for the unsuccessful contest made, and should not be awarded costs, in effect to be paid by those entitled to the property.

All concur.

Judgment accordingly.