Kerr agt. Dougherty.

## SUPREME COURT.

AMELIA KERR, executrix, and WALTER CARTER, executor, &c., agt. EDWARD H. DOUGHERTY and others.

*Will — construction of—Legacies — how far section 6 of the act of 1848 is applicable to bequests to corporations.*

The second clause of the will provided : " II. I give and bequeath unto E. H. D., son of W. C. D., deceased, the sum of ten thousand dollars in trust, for the sole use and benefit of his two daughters " (naming them), " to be given to them at such times and in such sums as he shall think proper, share and share alike. If either of them die before receiving their share, then the balance is to be given to the survivor:"

*Held,* that there is no such ambiguity or uncertainty as makes it impossible to ascertain the intention of the testator, nor is the trust void as being contrary to the provision of the statute. There is no suspension of the power of alienation beyond two lives in being under any circumstances. The trust terminates as to one-half of the legacy upon the death of the first of the beneficiaries, and as to the balance, it terminates upon the death of the survivor. Under no circumstances could the trustee hold any portion of the legacy after the death of the survivor.

The fifth clause of the will is as follows: " V. I give and bequeath unto the directors of the Union Theological Seminary of the city of New York, the sum of ten thousand dollars, to be invested as a permanent fund in stocks or bonds of the United States or of the state of New York, the interest of which shall be given as support to such student or students of said seminary studying with a view to the Christian ministry as shall be selected for the gift by the directors :

*Held,* that the objection that the legacy being given as support to the students of the seminary, which is not one of the specified purposes of the incorporation of the seminary, cannot be maintained, because, if the object of the corporation is the instruction in theology,·&c., the support of·such students would seem to be included in the general scope of the purposes of an institution of that description.

*Held,* also, that the objection that this legacy is void, because no purposes, whatever, have been enumerated in the act establishing this corporation, and no object to be attained by the creation of the same is set forth in its charter, is untenable, the " title " of the act of incorporation sufficiently indicates the purposes and object to be attained by the creation of the same. The act incorporates the Union Theological Seminary. The purposes of the institution are distinctly set forth in the title of the

act of incorporation, giving to the words "Theological Seminary" the meaning ordinarily applied thereto.

The seventh clause of the will is as follows : "VII. I give and bequeath unto the Presbyterian Board of Home Missions the sum of five thousand dollars : "

*Held*, that, a corporation which is the successor and representative of another corporation cannot enforce the payment of a legacy which the original corporation had no power to receive. The legacy is, therefore, void, for the reason that the devise or bequest was not executed at least two months before the death of the testator, as provided by the act of 1862 incorporating the Presbyterian Committee of Home Missions of which corporation the Presbyterian Board of Home Missions is the successor.

The eighth clause of the will is as follows : "VIII. I give and bequeath unto the New York Bible Society the sum of one thousand dollars : "

*Held*, that, as this corporation was formed under the general act of 1848, this bequest cannot be sustained, the will of the testator having been made less than two months prior to his death. The act of 1860 does not affect or restrict the operation of the two months' clause of section 6 of the act of 1848.

The tenth clause of the will is as follows : " X. I give and bequeath unto the Trustees of the General Assembly of the Presbyterian Church of the United States of America, for the use of the fund of Disabled Ministers, the sum of five thousand dollars : "

*Held*, that a bequest, such as is now under consideration, is, if made by a citizen of Pennsylvania, beyond all question void.

*Held*, further, that it appearing that this bequest being in contravention of the act of the general assembly of Pennsylvania, passed in 1855, is void in Pennsylvania, the domicile of the legatee, it is consequently void in New York, the domicile of the testator.

If the law of the testator's domicile in terms forbid bequests for any particular purpose, or in any other way limits the capacity of the testator in the disposal of his property by will, a gift in contravention of the law of the testator's domicile would be void *everywhere*.

The legacy contained in the twelfth article of the will, of $1,000 to the Sabbath schools of the Scotch Presbyterian Church, cannot be supported. There is no beneficiary named who has the power to take. It would be a great stretch of construction to put in the name of the Scotch Presbyterian Church as beneficiary, limiting the use of that legacy to the Sabbath schools.

Where, as in this case, the right of corporations to take by devise or bequest is restricted by the law of their incorporation, and is thereby made subject either to all the provisions of law relating to devises and bequests, or subject to the general laws of the state:

Kerr agt. Dougherty.

*Held*, that the legacies to the Union Theological Seminary, the Presbyterian Board of Home Missions, the New York City Mission and Tract Society and the Presbyterian Hospital are void by reason of the provisions of section 6 of the act of 1848, the will of the testator having been made less than two months prior to his death.

As the limitation in section 6 of the act of 1848 still exists, not having been affected or restricted by the statute of 1860, where the privileges of a corporation are made expressly subject to any and all provisions of law (as was the case in respect to the above corporations), they cannot be exempted from the operation of this provision.

The direction that "the legacies are to be paid as soon as the amounts can be collected out of funds now invested on bond and mortgage at the city of Grand Rapids, Michigan," requires that both the principal and interest of the property, as fast as received, should form the fund out of which the legacies should be paid.

There is no valid objection to the validity of the bequest to the widow during her life of the net income of the estate after the payment of the legacies. The testator intended to give to his widow the income of all the estate after the payment of the legacies, and the executors named in the will are the trustees under the will to hold the estate during the life-time of the widow and collect the income therefrom, and pay the same to her during her life. This evident intention of the testator cannot be defeated because of the failure of certain of the legacies to vest. There is no rule of construction which imposes such a penalty because a will contains an invalid legacy.

The eighteenth clause of the will is as follows : "XVIII. I give and bequeath all the principal left of my estate after the death of my wife, Amelia Kerr, to the societies, seminary or institutions named in the fifth, sixth, seventh, ninth and tenth articles or bequests, to be divided according to the several amounts so bequeathed *pro rata* : "

*Held*, that, the above bequests are subject to the act of 1860, and are valid only to the extent of one-half of the estate of the testator, the valid legacies previously given being included in that one-half.

*Held*, also, that the residuum is not given to these corporations as a class, but that the proportion of each is distinctly specified in the will, and that, if any of the bequests are void, as to such bequests, the testator has died intestate and they must be distributed under the statute of distribution.

*Held*, further, that the bequests in the fifth article of the will to the Union Theological Seminary, and in the seventh article thereof to the Presbyterian Board of Home Missions, and in the eighth article thereof to the New York City Bible Society, and in the ninth article thereof, to the New York City Mission and Tract Society, and in the tenth article thereof to the Trustees of the General Assembly of the Presbyterian

Kerr agt. Dougherty.

Church, &c., and in the twelfth article of the will to the Sabbath School of the Scotch Presbyterian Church, and in the thirteenth article of the will to the Presbyterian Hospital, are void and that the testator has died intestate as to the sums mentioned in said void bequests, and the same must be distributed to his widow and next of kin, according to the statute of distribution.

*Special Term, May,* 1878.

On the 31st day of December, 1876, Henry A. Kerr, of the city of New York, died, leaving him surviving his widow, the plaintiff, Amelia Kerr, and his half-sister, the defendant, Almira E. Holahan, as his only heirs at law and next of kin.

On the 8th of December, 1876, the said Henry A. Kerr duly made and executed his last will and testament, as follows:

"I, Henry A. Kerr, considering the uncertainty of this mortal life, and being of sound mind and memory, do hereby make, publish and declare this instrument to be my last will and testament.

"I. My will is that all my just debts and personal expenses shall be paid out of my estate by my executors herein named as soon as practicable after my decease. The legacies are to be paid as soon as the amounts can be collected out of funds now invested on bond and mortgage at the city of Grand Rapids, Michigan.

" II. I give and bequeath unto Edward H. Dougherty, son of William C. Dougherty, deceased, the sum of ten thousand dollars in trust, for the sole use and benefit of his two daughters, Amelia Kerr and Edda H. Dougherty, to be given to them at such times and in such sums as he shall think proper, share and share alike. If either of them die before receiving her share, then the balance is to be given to the survivor.

" III. I give and bequeath unto Mrs. Almira E. Holahan one thousand dollars, which sum is to be credited to her on the book now kept by me of the house 'No. 146 West Fourth street, and deducted from the amount there charged.'

"IV. I give and bequeath unto Maria Dunkin, the daughter of Thomas J. and Elizabeth Dunkin, one thousand dollars.

"V. I give and bequeath to the directors of the Union Theological Seminary of the City of New York, the sum of ten thousand dollars, to be invested as a permanent fund in stocks or bonds of the United states, or of the state of New York, the interest of which shall be given as support to such student or students of the said seminary studying with a view to the Christian ministry as shall be selected for the gift by the directors.

"VI. I give and bequeath unto the Presbyterian Board of Foreign Missions the sum of five thousand dollars.

"VII. I give and bequeath unto the Presbyterian Board of Home Missions the sum of five thousand dollars.

"VIII. I give and bequeath unto the New York City Bible Society the sum of one thousand dollars.

"IX. I give and bequeath unto the New York City Mission and Tract Society the sum of one thousand dollars.

"X. I give and bequeath unto the Trustees of the General Assembly of the Presbyterian Church of the United States of America, for the use of the fund of disabled ministers, the sum of five thousand dollars.

"XI. I give and bequeath unto the Board of Trustees of the Scotch Presbyterian Church, of which I am a member, the sum of one thousand dollars for church purposes.

"XII. I give and bequeath unto the Sabbath schools of the above named church the sum of one thousand dollars, to be divided as the pastor shall direct.

"XIII. I give and bequeath unto the Presbyterian Hospital the sum of one thousand dollars, for which aid and care is to be given to any of the members of the Scotch Presbyterian Church who may require aid in sickness.

"XIV. I give and bequeath unto my pastor, the Rev. Samuel M. Hamilton, the sum of one thousand dollars.

"XI. I give and bequeath unto my beloved wife Amelia Kerr, all the net income that may be derived from my estate

after my decease, and after the legacies are paid off she is to receive the same during her lifetime.

"Also, I give her all the furniture, useful and ornamental, in the building No. 10 East Ninth street, also in the building No. 146 West Fourth street, which I now own; also all my personal jewelry and clothing which I now own or may own at the time of my death.

" XVI. I hereby appoint Amelia Kerr, my wife, and Walter Carter, present elder in the Scotch Presbyterian Church, as my executrix and executor. I hereby give them full power and authority to grant, alien, sell and convey any and all lands and leasehold estates owned by me, or to which I shall be entitled, or in which I shall have any interest at the time of my death, and to execute, acknowledge and deliver good and sufficient conveyances thereof, and apply the proceeds of such sales in conformity to the provisions of this my last will and testament.

" XVII. I do further hereby will and declare that the bequests herein made to my said wife, Amelia Kerr, are in lieu of all dower or claim of dower in or to my estate. And I do hereby revoke all former or other wills and testaments at any time heretofore by me made, and I do hereby declare this instrument to be my last will and testament.

" XVIII. I give and bequeath all the principal left of my estate after the death of my wife, Amelia Kerr, to the societies, seminaries or institutions named in the fifth, sixth, seventh, ninth and tenth articles or bequests, to be divided according to the several amounts so bequeathed, *pro rata*.

" In witness whereof I have hereunto subscribed my name and affixed my seal this eighth day of December, eighteen hundred and seventy-six.

[L. S.]                    " HENRY A. KERR."

This will and testament was proved before the surrogate of the county of New York, February 1, 1877, as a will of real and personal estate, and letters testamentary were issued

to the plaintiffs, Amelia Kerr and Walter Carter, February 8, 1877, who have since duly qualified and taken upon them the administration of the estate.

The amount of the estate of the testator exceeds $500,000, of which over $300,000 was invested at Grand Rapids, Michigan.

The action is brought for a construction of the will, it being claimed by the defendant, Holahan, that various of the legacies are void, and that the residuary clause is in contravention of the acts of 1860 and 1848.

*George De Forest Lord*, of counsel, for plaintiffs.

*B. F. Watson*, of counsel, for defendant Holahan.

*R. W. De Forest*, for defendants Dougherty and The Scotch Presbyterian Church of the City of New York.

*Thatcher M. Adams*, for the Union Theological Seminary of the City of New York, and the Board of Foreign Missions of the Presbyterian Church in the United States of America.

*Walter Edwards*, for the Presbyterian Board of Home Missions, and the Board of Home Missions of the Presbyterian Church in the United States of America, and The New York City Mission and Tract Society, and The Trustees of the General Assembly of the Presbyterian Church in the United States of America, and The Presbyterian Board of Relief for Disabled Ministers and Widows and Orphans of Deceased Ministers.

*Charles C. Shelton*, for Amelia Kerr, executrix, and Henry W. Hinsdale, administrator (with the will annexed).

*A. B. Belknap*, for the Presbyterian Hospital, in the city of New York.

*M. M. Budlong*, for the New York Bible Society.

VAN BRUNT, J. — The first question to be considered is as to the validity of the legacy of $10,000 given in the second clause of the will to Edward H. Dougherty, in trust for the sole use and benefit of his two daughters.

It is claimed, by counsel for the defendant, Holahan, that this legacy is void, because there is no trust created by it which a court of equity could enforce at any time; because the last clause, if either of them die before receiving her share, then the balance is to be given to the survivor, is indefinite; and because the trust sought to be created is void, as being contrary to the provisions of the statute respecting perpetuities.

I do not think that there is any difficulty in determining what was the intention of the testator in the second clause of his will.

The testator evidently intended to place in the hands of Edward H. Dougherty a fund of $10,000, the income of which should belong to the two daughters equally, and that they should be equally interested in the principal; and that the trustee should have the power at such times as he should think proper, to advance to either of his said daughters the whole principal of such daughter's one-half of the legacy, or any portion of it, and in case either of the daughters should die before her half of the principal had been advanced to her, the balance of her half of the legacy remaining unadvanced is given absolutely to the survivor.

There does not seem to me to be any doubt but that the foregoing is a true interpretation of the language of the testator as contained in the second clause of his will.

There is no such ambiguity or uncertainty as makes it impossible to ascertain the intention of the testator.

The next question to be considered is, whether or not the trust is void as being contrary to the provision of the statute. I am unable to see that it in any way conflicts with the statute. There is no suspension of the power of alienation beyond two lives in being under any circumstances. The trust terminates as to one-half of the legacy upon the death of the first

of the beneficiaries, and as to the balance, it terminates upon the death of the survivor. Under no circumstances could the trustee hold any portion of the legacy after the death of the survivor. The provisions of the second clause of the will are, therefore, valid.

The next article of the will which is attacked is the fifth clause, which reads as follows : " I give and bequeath unto the directors of the Union Theological Seminary of the City of New York the sum of ten thousand dollars, to be invested as a permanent fund in stocks or bonds of the United States or of the state of New York, the interest of which shall be given as support to such student or students of said seminary studying with a view to the Christian ministry as shall be selected for the gift by the directors."

The defendant, Holahan, claims that this legacy is void, because, by law, the Union Theological Seminary had no chartered rights to take, by last will and testament, and permanently invest the principal and expend the interest or income of the gift during all time, " in support of such student or students of said seminary studying with a view to the Christian ministry as shall be selected for the gift by the directors," and because no purposes whatever have been enumerated in the act establishing this corporation, and no object to be attained by the creation of the same is set forth in its charter.

The last objection is untenable. The " title " of the act of incorporation sufficiently indicates the purposes and object to be attained by the creation of the same. The act incorporates The Union Theological Seminary ; and theological seminary, I think, is universally understood to be an institution in which young men, desiring to enter into the ministry, are instructed in theology ; and that the object of the institution was for instruction in *Christain* theology, is evidenced by the fact that one-half of its board of directors must be clergymen — a name applied only to ordained ministers belonging to some denomination of *Christains* — and also by the fact

that none but Christain students have the right to avail themselves of the benefits of the institution. The purposes of the institution are distinctly set forth in the title of the act of incorporation, as well as those of the theological seminary at Auburn, in the preamble of its act of incorporation giving to the words " theological seminary " the meaning ordinarily applied thereto, as above stated.

The objection that the legacy being given as support to the students of the seminary, which is not one of the specified purposes of the incorporation of the seminary, cannot be maintained, because, if the object of the incorporation is the instruction in theology, &c., the support of such students would seem to be included in the general scope of the purposes of an institution of that description.

The defendant, Holahan, raises the further objection to this legacy, that it is void by the provisions of section 6, of chapter 319, of the Laws of 1848. This question being raised as to the validity of several other legacies, its consideration will be reserved for a subsequent portion of this opinion.

The next article of the will which is attacked. is the sixth, which reads as follows : " I give and bequeath unto the Presbyterian Board of Foreign Missions the sum of five thousand dollars."

There seems to be no serious objection raised against the validity of this legacy.

The next article of the will which is attacked is the seventh, which reads as follows : " I give and bequeath unto the Presbyterian Board of Home Missions the sum of five thousand dollars."

In 1862 the legislature of the state of New York passed an act incorporating the Presbyterian Committee of Home Missions, giving it the power of taking, receiving and holding real and personal estate, and providing that no devise or bequest to such corporation in any will made by an inhabitant of the state, shall be valid unless made and executed at least two months before the death of the testator or testatrix. In

1871 the name of this corporation was changed to that of "The Presbyterian Board of Home Missions," the very title used in the seventh clause of the will under consideration. In 1872 the legislature incorporated the "Board of Home Missions of the Presbyterian Church in the United States of America."

The fifth section of the act of incorporation is as follows: "The Presbyterian Committee of Home Missions, incorporated under the laws of the state, by an act passed on the eighteenth day of April, eighteen hundred and sixty-two, the name of which was changed to that of the Presbyterian Board of Home Missions, by an act passed on the twentieth of January, eighteen hundred and seventy-one, are hereby authorized to assign, transfer, convey and deliver unto the corporation created by this act all the property, estates, rights of any and every description now held or enjoyed by them and which may hereafter be received by them by virtue of any grant, gift, bequest or device, or otherwise howsoever, which assignment, transfer, conveyance and delivery the corporation established by this act is hereby authorized and empowered to accept and receive; and the said corporation hereby created shall be and is hereby declared to be the legal successor of the said Presbyterian Board of Home Missions, formerly the Committee of Home Missions, and shall have, hold and use and enjoy all the corporate powers, franchises and privileges of said corporation last named, and all the property, estate and rights so assigned, transferred, conveyed and delivered, in the same manner, to the same extent as the said corporation last named might have done, and shall be entitled to receive, sue for and recover all legacies, devises, bequests and property which have heretofore been or may hereafter be made or given to the said corporation last named, provided, however, and it is hereby expressly declared, that the said property, estates and rights shall be held upon the same trusts, and for the same purposes only as the same are or otherwise would be

held by the said Presbyterian Board of Home Missions, formerly the Presbyterian Committee of Home Missions."

The fourth section of the act authorizes the last-named corporation to receive real and personal property, subject, however, to all the provisions of law relating to devises and bequests by last will and testament.

This last corporation claims that it is the body intended by the testator in the seventh clause of his will.

There being a corporation of the exact name mentioned in the will, I think that we must necessarily find that such corporation was the one intended.

Such being the case, the legacy is claimed by the defendant, the Board of Home Missions of the Presbyterian Church in the United States of America, as the legal successor of the Presbyterian Board of Home Missions, section 5 of the act expressly declaring that the Board of Home Missions, &c., shall be the legal successors of the Presbyterian Board of Home Missions, and that it shall be entitled to receive, sue for, and recover all legacies, devises, bequests and property which have heretofore been, or may hereafter be, made or given to the said corporation named.

The language clearly shows that the corporation of the Presbyterian Board of Home Missions, as a corporation, still exists, and that the legislature, by the act of 1872, did not intend to deprive it of its corporate franchises, and that it was capable of having bequests made to it. Such bequest must, however, necessarily be subject to the restrictions of the act creating that body, and if that corporation had no power to receive the bequest, I can conceive of no method by which another corporation, as its successor and representative, can enforce the payment of a legacy which the original corporation had no power to receive.

The legacy, therefore, to the Presbyterian Board of Home Missions, is void.

The next article of the will which is attacked is the eighth clause, which reads as follows: "I give and bequeath unto

the New York Bible Society the sum of one thousand dollars." It is very evident that the testator meant in that clause of the will the New York Bible Society.

This corporation was formed under the general act of 1848, and the question arises as to whether the restrictions of the sixth section of that act still exists.

The case of *Lefevre* agt. *Lefevre* (59 *N. Y.*, 434), is referred to as an authority, by the counsel for the Bible Society, to show that the act of 1860 repealed so much of section 6 of the act of 1848 as was inconsistent therewith, and the same case is also appealed to by the counsel for the defendant, Holahan, as an authority for the position that the restrictions of section 6 of the act of 1848 apply to the New York Bible Society.

It is impossible to tell, from the report of the case above named, how far the court concurred in the opinion of Mr. justice FOLGER, but they must have concurred in that portion of his opinion which held that the statute of 1860 did not affect or restrict the operation of the two months' clause of section 6 of the act of 1848.

This being true, the bequest to the New York Bible Society cannot be sustained, the will of the testator having been made less than two months prior to his death.

The next article in the will which is attacked, is the ninth clause, which reads as follows : " I give and bequeath unto the New York City Mission and Tract Society the sum of one thousand dollars."

This society was incorporated by chapter 63 of the Laws of 1866. Section 1 of the act gives it the power to take by devise real and personal property not exceeding $50,000 yearly value, subject to any provisions of law in relation to devises and bequests by will.

It is contended that this legacy is wholly void, because of the limitations contained in the act of 1848, section 6.

This objection will be considered in connection with the same objection as to other corporations.

The next article of the will which is attacked is clause tenth,

which reads as follows: " I give and bequeath unto the Trustees of the General Assembly of the Presbyterian Church of the United States of America, for the use of the Fund of Disabled Ministers, the sum of five thousand dollars."

In view of the conclusion to which I have arrived in respect to this legacy, it is unnecessary to discuss the question as to whether the defendant, the Trustees of the General Assembly of the Presbyterian Church in the United States of America, or the defendant, the Presbyterian Board of Relief for Disabled Ministers, and the widows and orphans of deceased ministers, was the corporation intended to be named by the testator in the tenth clause of his will.

Both of these corporations are organized under the laws of Pennsylvania. The first, under a special act of the general assembly of Pennsylvania, passed in 1799, and a supplement passed in 1864. The latter was organized under a general law of the commonwealth of Pennsylvania, in 1876. In 1855, the general assembly of Pennsylvania passed an act, sections 11 and 15 of which are as follows:

" XI. No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two creditable and at the time disinterested witnesses, at least one calendar month before the decease of the testator or alicnor, and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, next of kin or heirs according to law; provided that any disposition of property within said period *bona fide* made for a fair valuable consideration shall not be hereby avoided."

" XV. All dispositions of property hereafter made to religious, charitable, literary or scientific uses, and all incorporations or associations formed for such objects, shall be taken to have been made and formed under and in subordination to all the duties and requisitions of this act as rules of property and laws for their government."

Kerr agt. Dougherty.

From the foregoing it appears that a bequest, such as is now under consideration, is, if made by a citizen of Pennsylvania, beyond all question, void.

It would appear that it has become part of the public policy of that commonwealth, as it has become that of most of the other states of the Union, to prohibit a testator, unless the act is accompanied with due deliberation, and unless such time is allowed to elapse as gives an opportunity to revoke the same, if hasty or ill-considered, from setting aside the claims of those whom he is leaving behind him, and who have a natural right to look to him for some provision for their future life, and the giving of his fortune to religious and charitable corporations. It allows a testator to make any disposition of his property which he desires, accompanied with due deliberation, but wisely prohibits a disposition which is so open to abuse, and which is so frequently made under conditions which entirely warp the judgment.

The wisdom of the acts of 1848 and 1860, of the state of New York, could hardly have a better exemplification than is furnished by the facts of the present case. The testator having a sister, with whom he seems to have been on friendly terms, and who was a widow, with two children, and who was compelled to keep a boarding-house to support herself and family, gives the whole of his estate, amounting to over a half of a million dollars, to religious corporations, excepting the pitiful sum of $1,000, which he gives to his sister.

In the case of *Chamberlain* agt. *Chamberlain* (43 *N. Y.*, 424) the court of appeals have laid down with great distinctness the rules which are to govern in determining the validity of legacies by citizens of this state to corporations of foreign states.

The court say as follows :

" Personal property has no locality, and, therefore, the law of the domicile of the owner governs its transmission, either by last will and testament, or by succession, in case of intestacy (2 *Kent Com.*, 429; *Moulton* agt. *Hunt*, 23 *N. Y.*, 394;

*Laurence* agt. *Kitteridge*, 21 *Conn.*, 577). But if, within the *lex domicilii*, a will has all the forms and requisites to pass title to personalty, the validity of particular bequests will depend upon the law of the domicile of the legatee and of the government to which the fund is, by the terms of the will, to be transmitted for administration, and the particular purposes indicated by the testator. Whatever may be the law of Pennsylvania, a testator domiciled in that state cannot establish, by bequests of personalty to citizens or corporations of this state, a charity or trust to be administered here inconsistent with the policy or the laws of this state. A gift by will of a citizen of this state to a charity, or upon a trust to be administered in a sister state, which would be lawful in this state, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the state in which the fund was to be administered.

"Bequests in aid of foreign charities, valid and legal in the place of their existence, will be supported by the courts of the state in which the bequests are made (*Hill on Trustees*, 457). If the legatee, whether a natural or artificial person, and whether he takes in his own right or interest, is capable, by the law of his domicile, to take the legacy in the capacity and for the purposes for which it is given, and the bequest is, in other respects, valid, it will be sustained, irrespective of the law of the testator's domicile, subject, however, to this qualification, that if the law of the testator's domicile, in terms, forbid bequests for any particular purpose, or in any other way limit the capacity of the testator in the disposal of his property by will, a gift in contravention of the law of the testator's domicile would be void everywhere."

It will thus be seen that, in order that bequests in aid of foreign charities, made by citizens of this state, shall be supported by the courts of this state, it is necessary that the bequest shall be valid and legal in the state where the charities exist. In other words, this state will not support a bequest to a corporation which is void by the laws of the state in

which the recipient is situated, or where it appears that such bequest is against the public policy of that state.

It is no answer to this objection to say that the Trustees of the General Assembly, &c., having been chartered by special act in 1799, their powers cannot now be restricted by the act of 1855, because, as has already been shown, the question is whether a bequest made under the circumstances which the bequest under consideration was made is valid by the laws of . Pennsylvania.

It appearing that this bequest, being in contravention of the act of 1855, is void in Pennsylvania, the domicile of the legatee, it is consequently void in New York, the domicile of the testator.

The legacy contained in the eleventh article of the will seems to be valid.

The legacy contained in the twelfth article of the will, of $1,000 to the Sabbath schools of the Scotch Presbyterian Church, cannot be supported.

There is no beneficiary named who has the power to take. It would be a great stretch of construction to put in the name of the Scotch Presbyterian Church as beneficiary, limiting the use of that legacy to the Sabbath schools.

The next article of the will which is attacked is the thirteenth, which reads as follows: "I give and bequeath unto the Presbyterian Hospital the sum of one thousand dollars, for which aid and care is to be given to any of the members of the Scotch Presbyterian Church who may require aid in sickness."

The objection raised to this legacy is that it is void by the provisions of section 6 of the act of 1848, and this brings us to the consideration of the question as to how far this section of this act is applicable to the various corporations heretofore mentioned.

The act amending the charter of the Union Theological Seminary, passed in 1870, provides that it shall be lawful for it to take by devise or otherwise, subject to all the provisions

of law relating to devises and bequests by last will and testament.

The act incorporating the New York City Mission and Tract Society, chapter 63 of the Laws of 1866, provides that it shall be capable of taking by purchase or devise for the uses and purposes of the corporation, subject to any provisions of law in relation to devises and bequests by will.

The act incorporating the Presbyterian Hospital, in the city of New York, chapter 15 of the Laws of 1868, provides that it shall be capable of taking by devise or otherwise, so far as the same is in accordance with the general laws of the state and not otherwise.

The act incorporating the Board of Home Missions of the Presbyterian Church, &c., chapter 287 of the Laws of 1872, provides that it may take by devise, subject, however, to all the provisions of law relating to devises and bequests by last will and testament.

It is thus seen that the right of the four above-named corporations to take by devise or bequest is restricted by the law of their incorporation, and is thereby made subject either to all the provisions of law relating to devises and bequests, or subject to any provision of law relating to devises or bequests, or subject to the general laws of the state.

Section 6 of the act of 1848 would seem to be certainly a provision of law in respect to devises and bequests by last will and testament, and it indicates the general policy of this state in reference to devises and bequests to corporations incorporated for benevolent purposes.

It is true that the provisions of this section, by its terms make it applicable only to corporations formed under the act containing it.

That the legislature has the right to make this provision of law applicable to such corporations as they might see fit, other than those incorporated under the act of 1848, could not be seriously questioned, even if the proposition had not been

determined by the court of appeals as it has been done in the case of *Lefevre* agt. *Lefevre*, above mentioned.

It may be true that the act of 1860 may indicate a change of policy in some respects upon the part of the state, but it in no way interferes or is inconsistent with the two months' limitation contained in the act of 1848.

If this limitation in section 6 of the act of 1848, still exist, then, if the privileges of a corporation are made expressly subject to any and all provisions of law, how can they be exempted from the operation of this provision ?

At the time of the incorporation of these associations section 6 of the act of 1848 and the act of 1860, were the only provisions of law of any general character which related to benevolent corporations.

That the provisions of the act of 1848, are general in their character is conceded by both of the opinions in the case of *Lefever* agt. *Lefever*, above mentioned.

In the charters above referred to, the legislature, by their language, clearly indicate that they had in mind the fact that there was more than one provision of law in relation to devises and bequests to benevolent associations, because they say that the right to take by devise shall be subject to all the provisions of law or any provision of law; language inconsistent with the idea that reference was had to a single provision of the legislature regulating devises and bequests to benevolent corporations, as would be the case if all the provisions of the act of 1848 are excluded.

That this view is correct seems to be placed beyond all doubt when we consider what the legislature do when they intend that the restrictions of the act of 1860 only shall apply to a corporation which they are incorporating.

In 1862, the Board of Foreign Missions of the Presbyterian Church, &c., was incorporated by the legislature, and was given the power of taking by devise and was made subject to the provisions of chapter 360 of the Laws of 1860. Language very different from that used in the charter previously named.

The language used in the charter of the Presbyterian Hospital to take by devise, subject to the general laws of the state, is different from that which we have been considering, but it adds a further strong argument in favor of what has been already said in reference to the intention of the legislature.

This language clearly imports that the legislature had in view the existence of more than one law regulating devises and bequests to charitable institutions. They make the Presbyterian Hospital's power to take by devise subject to the general "laws" of the state, and by the use of the word "laws" instead of "law," we must assume that it was done with deliberation and knowledge of what previous legislation had been, and as the acts of 1860 and 1848 were the only laws upon the statute book relating to the subject, which were general in their character, the legislature must have intended to refer to these acts when they speak of the general laws of the state relating to this subject.

The legacies, therefore, to the Union Theological Seminary, the Presbyterian Board of Home Missions, the New York City Mission and Tract Society, and the Presbyterian Hospital, are void.

The next question to be considered is the provision of the will reading as follows : " The legacies are to be paid as soon as the amounts can be collected out of funds now invested on bond and mortgage at the city of Grand Rapids, Michigan."

Some of the parties claim that this direction requires all the legacies to be provided for out of the income *only* of the property in Michigan, as it should be received. Others claim that the principal only should be applied to the payment of legacies, and others again claim that both the principal and interest of the property, as fast as received, should form the fund out of which the legacies should be paid. I think the latter expresses the true intention of the testator. It seems to be evident that the testator intended that the legacies should be paid as soon as possible out of his moneys invested in Michigan, and after the payment of these legacies the widow is

to be entitled to the income of all of the estate during her life.

That is, that a sufficient amount of the funds invested in Michigan to meet the legacies should be collected as soon as possible by the executors, and that after such fund should be provided, the widow should be entitled to the income on the balance.

The next question which is raised and which it is necessary to consider is the validity of the bequest to Amelia Kerr, the widow, during her life, of the net income of the estate after the payment of the legacies.

I can see no valid objection to the validity of this portion of the will. It is entirely evident what the intention of the testator was, and he has expressed such intention in language reasonably certain. He intended to give to his widow the income of all of the estate after the payment of the legacies, and, I think, that it is very evident that the executors named in the will are the trustees under the will to hold this estate during the lifetime of Mrs. Kerr, and collect the income therefrom, and pay the same to her during her life.

This evident intention of the testator cannot be defeated because of the failure of certain of the legacies to vest.

There is no rule of construction which imposes such a penalty, because a will contains an invalid legacy.

It follows from this that no part of the estate, except such as it will subsequently appear Mrs. Kerr is entitled to receive under the statute of distribution, is to be paid over to her, but is to be held by the executors as trustees under the will.

It is also apparent that the duties of the executor and administrator with the will annexed appointed by the probate judge in Michigan, after paying and satisfying, in due course of administration, all debts or claims of any kind existing in favor of any persons, residents in Michigan, are to transfer and pay over the rest of the estate in their hands to the plaintiffs, as the principal executors charged with the payment of debts and legacies and with the final distribution of the estate,

the fund so received after the payment of debts and legacies to be held by the plaintiffs as trustees under the will.

The only remaining questions to be considered, are as to the construction of the eighteenth, inaptly called the residuary, clause of the will, and the question as to what disposition must be made of the void legacies. I do not think that the criticism made by the counsel for the defendant, Holahan, as to the uncertainty as to the names of the beneficiaries intended in the eighteenth clause of the will, is well taken.

The testator evidently referred to the numbers attached to the several articles of his will.

The eighteenth clause of the will reads as follows: "I give and bequeath all the principal left of my estate, after the death of my wife, Amelia Kerr, to the societies, seminary or institutions named in the fifth, sixth, seventh, ninth and tenth articles or bequests, to be divided according to the several amounts so bequeathed, *pro rata*."

It is conceded by all the parties that the above bequests are subject to the act of 1860, and that the same are valid only to the extent of one-half of the estate of the testator, the valid legacies previously given being included in that one-half. This section distributing the principal left of the estate, after the death of his wife, to the societies, seminary or institutions named in the fifth, sixth, seventh, ninth and tenth articles to be divided according to the several amounts so bequeathed, *pro rata*, when fully stated, is to be read as follows: I give and bequeath all the principal left of my estate, after the death of my wife, to the following named societies, seminary or institutions in the following proportions, to wit:

To the Union Theological Seminary of the city of New York, ten twenty-sixth parts thereof.

To the Presbyterian Board of Foreign Missions five twenty-sixth parts thereof.

To the Presbyterian Board of Home Missions, five twenty-sixth parts thereof.

To the New York City Mission and Tract Society, one twenty-sixth part thereof.

To the Trustees of the General Assembly of the Presbyterian Church of the United States of America for the use of the fund of disabled ministers, five twenty-sixth parts thereof.

After the word "estate" in the foregoing bequest, the law of 1860, inserts the words "not exceeding more than one-half thereof after the payment of my debts."

When this eighteenth clause is read in the manner indicated, it is apparent that the residuum is not given to these corporations as a class, but that the proportion of each is distincly specified in the will, and that, if any of the bequests are void, as to such bequests the testator has died intestate and they must be distributed under the statute of distribution (*Downing* agt. *Marshall*, 23 *N. Y.*, 382; *White* agt. *Howard*, 46 *N. Y.*, 144).

As to that portion of the estate as to which the testator has died intestate, the plaintiff, Mrs. Kerr, is entitled to receive her share as provided for by the statute of distribution (*Hoes* agt. *Van Hoesen*, 1 *Barb. Chan.*, 396).

It follows, therefore, that the bequest in the second article of the will of $10,000 to Edward H. Dougherty, in trust, is valid.

That the bequests in the sixth article of the will to the Presbyterian Board of Foreign Missions, and in the eleventh article of the will to the Board of Trustees of the Scotch Presbyterian Church, are valid.

That the bequest in the fifth article of the will to the Union Theological Seminary, and in the seventh article thereof to the Presbyterian Board of Home Missions, and in the eighth article thereof to the New York City Bible Society, and in the ninth article thereof to the New York City Mission and Tract Society, and in the tenth article thereof to the Trustees of the General Assembly of the Presbyterian Church, &c., and in the twelfth article of the will to the Sabbath school of the Scotch Presbyterian Church, and in the thirteenth article of the will to the Presbyterian Hospital, are void, and that

the testator has died intestate as to the sums mentioned in said void bequests, and the same must be distribted to his widow and next of kin, according to the statute of distribution.

That the principal and interest of the funds invested in Michigan are to be devoted to the payment of the legacies.

That the bequest in the fifteenth article of the will of all the net income of the testator's estate, after the payment of the legacies to the testator's widow, Amelia Kerr, during her lifetime, is valid, she being entitled to receive the income during her life, the executors named in the will holding the principal of the estate as trustees, for the purpose of collecting the income during the life of Mrs. Kerr, and for the purpose of distributing the principal after her death.

That the bequest in the eighteenth article of the will, by which the testator bequeaths to the societies named in the fifth, sixth, seventh, ninth and tenth articles of the will, all the principal left of his estate, after the death of his wife, is void, so far as it attempts to dispose of, including the hereinbefore mentioned valid legacies, more than one-half of the testator's estate as it existed at the time of his death, and that as to such excess the testator died intestate and the same is to be distributed according to the statute of distribution.

That the bequests in the eighteenth article of the will, to the Union Theological Seminary, to the Presbyterian Board of Home Missions, to the New York City Mission and Tract Society, and to the trustees of the General Assembly of the Presbyterian Church, &c., are void.

That the legacy in the eighteenth article, to the Presbyterian Board of Foreign Missions, is valid, and that under such bequest the said board, upon the death of Mrs. Kerr, is entitled under the rule laid down in the note to the case of *Chamberlain* agt. *Chamberlain* (we being left entirely in the dark as to the reason for the modification of the result arrived at in the opinion, contained in the note, the opinion seeming to be better law), to five twenty-sixth parts of the whole estate left at the death of Mrs. Kerr.

The testator having died intestate as to all of his estate mentioned in the eighteenth clause of his will, except as to five twenty-sixth parts thereof, Mrs. Kerr, his widow, is entitled to receive her share under the statute of distribution, the defendant, Holahan's, share being subject to the life estate of Mrs. Kerr.