DETERMINED IN THE

# FIRST DEPARTMENT

AT

## GENERAL TERM,

### April, 1890.

---

BENJAMIN C. WETMORE, as Executor, etc., Respondent, *v.*
ST. LUKE'S HOSPITAL OF THE CITY OF NEW YORK,
THE NEW YORK INSTITUTION FOR THE BLIND
and Others, Appellants.

*Will — lapsed legacy — right thereto as between general and residuary legatees — general legacies, not deferred to the termination of life estates — legacy for a specific purpose not a specific legacy.*

A testatrix, by her will, made certain specific devises and bequests, and directed that the rest of her estate be converted into cash and that certain legacies be paid therefrom, and then provided as follows: " All the rest and residue of my said residuary estate, not herein otherwise disposed of, I order and direct my said executor to pay over, and I give and bequeath the same to the above-mentioned James Drake Black, Mary Hopeton Drake and Mary Hopeton Smith, absolutely, share and share alike."

One of the general legatees died before the testatrix, and two other general legacies for other reasons failed of execution, and the estate of the testatrix proved to be insufficient to pay the remaining general legacies.

*Held,* that, as between the general legatees and the residuary legatees, the lapsed legacies would not be considered as a separate fund, passing as such, by reason of their failure of execution, to the residuary legatees, but would be disposed of as though no such general legacies had been given by the will of the testatrix.

That, until the debts of the testatrix and the general legacies were paid the residuary legatees were not entitled to receive anything.

The testatrix bequeathed a portion of her estate in trust, to be held during the lives of the beneficiaries, and directed that, upon the death of the *cestuis que trust,* the trust funds in which they had a life estate should fall into and be disposed of as a part of her residuary estate.

*Held,* that the residuary estate referred to was the final estate, and not the estate in which the general legatees were interested (although that also was referred to in the will as a residuary estate), as it could not have been the intention of the testatrix that these general legacies should have been left open until the life estates had terminated.

The testatrix executed a codicil to her said will, by which she gave a legacy to St. Luke's Hospital, in the city of New York, of $5,000 to endow a bed to be called the "Hope Bed."

*Held,* that the fact that this legacy was contained in the codicil gave it no priority over the general legacies contained in the will.

That the fact that the testatrix knew that $5,000 was necessary to endow a bed in the hospital, and that if the legacy was reduced below that sum such endowment was impossible, did not justify a construction that because the legacy was given for a specific purpose it should be considered a specific legacy, rather than a general one, and consequently should not abate proportionately with the other general legacies.

Appeal by five of the defendants in the above-entitled action from portions of a judgment entered therein, after a trial at a Special Term held in the county of New York, in the office of the clerk of said county on the 5th day of March, 1889.

*Hoffman Miller,* for St. Luke's Hospital, appellant.

*Davies & Rapallo,* for Domestic and Foreign Missionary Society, appellant.

*A. R. Dyett,* for Presbyterian Home, appellant.

*E. W. Sheldon* and *Wager Swayne,* for the New York Society for the Relief of the Ruptured, etc., and the American Tract Society, appellants.

*Enos N. Taft,* for the American Seamans' Friend Society, appellant.

*George H. Balkam,* for Mary Hopeton Drake, respondent.

*Williamson & Reynolds,* for plaintiff, respondent.

*Thomas B. Hewitt,* guardian *ad litem* for infant respondent, James D. Black.

*William M. Martin*, guardian *ad litem* for infant respondents, Smith and Atterbury.

Van Brunt, P. J. :

This action was brought by the plaintiff as executor of the will of Mary H. Drake, for a construction of that instrument.

The testatrix in and by her will, after providing for the payment of debts and funeral expenses, and attempting to exercise the power of appointment conferred upon her by the will of her father, James Drake, directed her executors to sell certain real estate, and out of the proceeds to pay a certain bond given by her to one James F. Evans, or in case he should refuse to accept payment of the bond, to pay the whole thereof to the United States Trust Company in trust to invest, and pay the income thereof to Evans during his life and to pay the principal upon his death to his issue him surviving, but if he should die leaving no issue him surviving, the testatrix directed that the principal should form part of her residuary estate and be disposed of as the same was afterwards disposed of in her said will.

She then made certain specific devises and bequests, and by the seventh clause she ordered and directed her executors to sell all the rest, residue and remainder of her estate, and to convert the same into cash, and out of the proceeds to pay certain legacies specified.

Amongst these legacies was one of $10,000 to Sarah A. Lawrence, who died prior to the testatrix, and one of $1,000 to Henry Bradley if he should be in the service of the testatrix at the time of her death, which he was not ; and one of $5,000 to the United States Trust Company in trust, to pay the income thereof to Esther M. Behin during her life ; and one of $5,000 to the same company in trust, to pay the income thereof to Emily Hancock during her life. The testatrix directed that upon the death of either Esther M. Behin or Emily Hancock the trust fund in which she had a life interest should fall into and be disposed of as part of her residuary estate.

The eighth clause of the will directed that after payment of the legacies and provisions for annuities made in the seventh clause, her executors should pay out of the proceeds of the sale the legacies therein specified. These legacies are all to charitable purposes, and

amongst them are legacies of $5,000 each to the five defendants who have taken these appeals, and one of $5,000 to Benjamin C. Wetmore, to be applied by him to such charitable uses as he might see fit. The eighth clause of the will then contains the following: "All the rest and residue of my said residuary estate not herein otherwise disposed of, I order and direct my said executor to pay over, and I give and bequeath the same to the above-mentioned James Drake Black, Mary Hopeton Drake and Mary Hopeton Smith, absolutely, share and share alike."

By a codicil to her will the testatrix modified the attempt to exercise the power of appointment given to her, and made changes in certain specific legacies, the validity of which is not involved in this action. She also gave and bequeathed to St. Luke's Hospital, in the city of New York, the sum of $5,000 to endow a bed to be called the "Hope Bed," and gave and bequeathed the right of disposing of said bed to one Hopeton Drake Atterbury. She also revoked the bequests contained in the eighth clause of her will of all the rest and residue of her said residuary estate not otherwise disposed of to James Drake Black, Mary Hopeton Drake and Mary Hopeton Smith, and instead thereof she directed her executor to pay over, and she gave and bequeathed the said rest and residue to the said James Drake Black, Mary Hopeton Drake, Mary Hopeton Smith and Hopeton Drake, share and share alike. These four residuary legatees are infants.

The learned justice before whom the case was tried found the death of Sarah A. Lawrence before the testatrix; that said Bradley was not in the service of the testatrix at the time of her death, and that the legacy of $5,000 to Benjamin C. Wetmore to be applied to charitable uses was void for indefiniteness. He also found that the property and estate left by the testatrix was insufficient in amount to pay in full the legacies given in and by the eighth division of her will.

Upon the decision of the court a judgment was entered, amongst other things, to the effect that all the legacies mentioned in subdivision 8 of said will must abate in proportion to their respective amounts to the extent to which the estate of the testatrix (after deducting all specific legacies and devises given by said will, all amounts expressly directed by said will to fall into or form part of the

residuary and also the total amount of the legacies mentioned in division seventh of said will) shall prove insufficient to pay in full all the legacies and proposed legacies mentioned in said eighth division of said will; and that the amount of the lapsed legacy to Sarah A. Lawrence, the ineffectual legacy to Henry Bradley and the void legacy to Benjamin C. Wetmore (subject to its proportional abatement), and all sums not effectually given or disposed of by the seventh clause should go to the defendants James Drake Black, Mary Hopeton Drake, Mary Hopeton Smith and Hopeton Drake Atterbury, who were entitled to the same, share and share alike under the residuary bequest mentioned in the fourth division of said codicil; and that the legacy of $5,000 to St. Luke's Hospital contained in said codicil must be classed as one of the legacies in the eighth division, and must be paid and abate with such legacies. From these portions of the judgment this appeal is taken.

In the disposition of the questions presented upon the appeal it is necessary to bear in mind one or two elementary rules governing the construction of wills. The first is, that a will should be construed according to the intention of the testator, and that lapsed legacies, in case there is a general residuary clause, go to the residuary legatee, and not to the next of kin; and that a strictly residuary bequest must defer to all general legacies and annuities, and can only be paid after all such claims are satisfied.

It is to be observed, in considering the question as to the lapsed legacy in favor of Sarah A. Lawrence, and the void legacy in favor of Benjamin C. Wetmore, that the rules of construction which have been adopted have arisen in contests between residuary legatees and next of kin, and that, so far as we have been able to ascertain, no question has been raised, as between the legatees themselves, under the will. It has been universally held, in cases where there did not appear to be any deficiency of assets to pay the general legacies, that where there is a general residuary clause, lapsed legacies go to the residuary legatees. After all debts, legacies and charges upon the estate are provided for, the residuary legatee takes the balance; and it is only in those cases in which the residuary legatee is not a general residuary legatee, but is a legatee of a particular part of the residue, that a lapsed legacy has been held to go to the next of kin. Such a case was *Kerr* v. *Dougherty* (79 N. Y., 334), as will be more

particularly seen by the report of the case in 59 Howard, 44, where the will is set out more at large.

It is clear that, as to the bequest to Henry Bradley, the will is to be considered precisely the same as though it was not contained therein, because it is given to him in case he should be in the service of the testatrix at the time of her death, and as a consequence of his having left her service before her death the legacy could not become operative; and the will is to be construed, as has been said, precisely the same as though it had not been inserted therein, and we think that the same rule applies to the legacy that has lapsed because of the death of Sarah A. Lawrence, and to the legacy to Benjamin C. Wetmore, void for indefiniteness. We think the will is to be considered as though, in view of the death of Sarah A. Lawrence before the testatrix, and in view of the void character of the bequest to Wetmore, they were not contained in the will at all.

The result of these considerations is that the will contained no bequests whatever to these various parties, and there is no fund created thereby which can be carved out of the estate and held to be separate therefrom so as to be transferred to the residuary legatees, in view of the deficiency of the assets. There is no question, had there been no deficiency in the assets, but what the final residuary legatees would have taken all that was left after the payment of the legacies, which were operative at the death of the testatrix, because there was an evident intent upon the part of the testatrix to give to the final residuary legatees whatever might be left after complying with her directions in reference to the provisions contained in her will. But in the case at bar the will is to be construed not in the light of subsequent events, but in view of the fact that the testatrix undoubtedly supposed that her estate was sufficiently large to meet all the charges she placed upon it and to leave something for the residuary legatees besides. In this it appears she was mistaken, and there is a deficiency of assets to pay the legacies provided for in the will immediately before the residuary clause, hence there is no residue.

In order that there should be a residuary estate the provisions of the will must be fulfilled and something must be left over. Debts and legacies must be paid and then the residuum goes to the residuary legatees. But until the debts and legacies are paid it is difficult to

see how, under the residuary clause, residuary legatees are entitled to receive anything. In fact, as has already been said, there cannot be a residuum where there is not sufficient of the estate to pay the charges which have been placed upon it. Therefore, these legacies to which attention has been called necessarily went to swell the body of the estate, and were to be appropriated to the payment of the legacies, and did not go to the residuary legatees upon the theory that lapsed legacies, where there is a general residuary clause, go to the residuary legatees. As we have said, this question has not arisen between general legatees and residuary legatees in the cases which have been discussed in the courts, but the contest has been between the next of kin and the residuary legatee. And in these discussions the only ground upon which the next of kin claimed the estate was that the testator had died intestate in respect thereto, which could only prevail where there was no general residuary clause.

In the case at bar the testatrix has effectually disposed of the whole of her estate, and, indeed, attempted to dispose of more than she had. Hence this difficulty. If all the general legacies contained in the will had been satisfied, there would have been no question to discuss. But until the general legacies have all been satisfied we do not understand how any portion of the estate can be devoted to the residuary legatees. We think, therefore, the learned judge erred in coming to the conclusion that the legacies to which attention has been called fell into the final residuary estate. On the contrary, we think that they formed part and parcel of the estate to be applied to the payment of the general legacies, and until such general legacies were satisfied the residuary legatees could receive no benefit therefrom.

This brings us to the other question involved, and that relates to the fund which the testatrix has bequeathed, in trust, during the lives of James F. Evans, Esther M. Behin and Emily Hancock, and which, upon the death of the life tenant, is to fall into and be disposed of as part of her residuary estate. The question necessarily presented here is, what residuary estate did the testatrix intend? There seems to be in this will three residuary estates. The first one mentioned is in the seventh clause, the next one is in the commencement of the eighth clause; and in the same clause, at the end thereof, we find the final residuary clause.

In the consideration of this question it is necessary to bear in mind that the testatrix supposed her estate would be sufficient to pay the whole amount of her legacies. Having this in mind, it seems to be perfectly apparent what she meant by her residuary estate in respect to the trust funds mentioned. The legacies provided for in the will became payable within one year after her death. These trust estates might exist for a considerable length of time. She did not intend that these general legacies should be left open until these trust estates should fall in; and it cannot be assumed that, in referring to her residuary estate, she had in mind anything else than the final residuum which would remain after the payment of all her legacies, and which would finally pass under the residuary clause to the four infants mentioned therein. She, supposing that her estate was sufficient to pay all the legacies, could certainly not have intended that, upon the termination of these trust estates, the funds composing them should fall into a residuum which had already served its purpose in the payment of these legacies, and the balance of which had gone over to the final residuary legatees.

If any other construction is to be placed upon this clause, the result necessarily follows that the testatrix knew that she was giving more in her general legacies than her estate amounted to, and that these trust funds at some indefinite period in the future, when the trust estate would be terminated, would be required in making up the amounts which she had thus devoted to charity. We think that no such intention can be imputed to the testatrix. She certainly never intended that the payment of these charitable legacies should be deferred until the termination of this trust estate. This consideration seems to us to make it plain that the residuary estate to which she referred, and in which she placed these funds at the termination of the life estate, was the final residue which was given to the four infants above mentioned.

This leaves but one other point to be discussed, and that is the question raised by the appeal of St. Luke's Hospital as to the legacy given to it in the codicil. The court below found that it must be classed with those contained in the eighth clause of the will, and with them must abate. The appellant contends that it should be ranked with those found in the seventh clause. It seems to us that the legacy is not to be ranked with those of any particular division

of the will, but is to be treated simply as a general legacy, and if there is any order of priority stated in the will in which legacies shall be paid, the legacy in question must be subservient to such direction as to priority. It is evident from the will that the legacies mentioned in the seventh clause are to be paid first. This legacy by the codicil is not inserted therein or directed to be inserted therein or to be paid in the same order, but is simply a general legacy. Hence it must be paid after the legacies which are specifically directed to be paid by the seventh clause. This makes the payment of this legacy to run parallel with the payment of the general legacies contained in the will.

These general legacies are provided for by the eighth clause, and are such as are to be paid prior to the ascertainment of the general residuum of the estate. The legacy in question naturally falls within that class. It certainly would be a perversion of the rules of construction to hold that merely because this legacy was contained in the codicil it should have a preference over any other general legacy. The same reasoning which would give it a preference over the legacies contained in the eighth clause would give it the same preference over those contained in the seventh clause. And it was clearly not the intention of the testatrix that this legacy should have a preference over and above all other legacies provided for.

It is urged that the legacy to the hospital was for the purpose of endowing a bed, and that there cannot be any question but that the testatrix was cognizant of the sum necessary for such purpose; and it being evident that she was aware that it took $5,000 to endow a bed, that that was the cause of her specifying that amount in the codicil, and that if the legacy abates, no endowment is possible; therefore, the object of the testatrix's generosity is defeated, and it is urged that because it is given for a specific purpose, therefore it should be considered a specific legacy rather than a general one, and, being of this character, does not abate.

The difficulty with this proposition is that the fact is entirely overlooked that we must construe this will upon the assumption that the testatrix believed she had sufficient estate to pay all her legacies. She doubtless had no thought of the contingency which has arisen, namely, the deficiency of assets, and, therefore, in the making of

her codicil she gave no more specific directions in regard to this legacy than are therein contained. Merely because the testatrix's object may be defeated unless this preference be given does not authorize the court to give it a preference which the testatrix had not in mind at the time of the making of the will. Merely because subsequent events have shown that she made miscalculations in regard to the amount of her estate, the court is not authorized to give a different direction in respect to the order in which legacies are to be paid than that contained in the will. We cannot see that because this legacy was given for a specific purpose, that that fact alters the question or makes it proper to treat it as a specific legacy having a preference over all others. The mere statement of the purpose for which a legacy is given in no manner alters its character.

Upon the whole case, therefore, we are of opinion that that portion of the judgment which provided that the lapsed and void legacies go to the residuary legatees should be reversed, and instead thereof it should be adjudged that they formed part of the general estate to be devoted to the general charges upon the estate, and that the judgment in other respects should be affirmed.

BARRETT and BARTLETT, JJ., concurred:

So ordered.