Hartson *v.* Elden.

HENRY HARTSON, administrator *cum testamento annexo de bonis non* of Nathan Elden, deceased,

*v.*

PERLEY ELDEN et al.

1. The bequest of the interest or produce of a fund, directly or through a trustee, to a legatee, without limitation as to continuance, is a gift of the fund itself.

2. Where the legacies are directed to be paid out of the "*estate*" of the testator, the real estate is charged with the legacies

3. A testator provided that the interest of $5,000 of his estate should be used to keep in repair the graves of his wife and himself in the Oak Hill cemetery of Vineland, and that the remainder of said interest should be employed in the general improvement of the cemetery; and also made similar provision for the care of the graves of his parents, sister and brothers at Buxton, Maine, adding thereto a clause to the effect that $2,000 of the fund bequeathed "may be employed" in building a monument for the parents, sister and brothers.—*Held*, that all these provisions are void under the rule against perpetuities

4. The act of March 29th, 1878 (*Rev. Sup. 76*), abolishes the rule against perpetuities so far as it affects gifts made to cemetery corporations for purposes designated by it.

5. Where, at the death of a testator, a bequest to a cemetery was void under the rule against perpetuities and the property bequeathed vested in the testator's next of kin, the subsequent enactment of the statute above referred to, before the day for the payment of the legacy, did not divest the rights of the next of kin in favor of the cemetery company.

---

On bill to construe will, answers, cross-bill and proofs.

*Mr. William E. Potter*, for the complainant.

*Mr. Leverett Newcomb*, for Perley Elden and others.

*Mr. Royal P. Tuller*, for Oak Hill Cemetery.

*Mr. S. Meredith Dickinson*, for the Lombard University.

THE CHANCELLOR.

Nathan Elden, of Vineland, died in September, 1875, testate, leaving his widow him surviving. His nearest kin are a large number of cousins, who are parties defendant in this suit.

By his will Mr. Elden first directed the payment of his debts and then gave his real and personal estate to his widow for her life. Then the will continued in this language:

"*Third.* After the demise of my wife the interest of five thousand dollars of my estate shall be used to keep in repair our graves in the Oak Hill Cemetery, of Vineland, the remainder of said interest to be employed in the general improvement of said Cemetery; and the lawful authorities of Vineland are hereby empowered to see that said funds are used for the purposes above designated.

"*Fourth.* The interest of five thousand dollars more of my estate, if it remains after the death of myself and my wife, shall be used to keep in repair the graves of my father, mother, sister and brothers in Buxton, Maine; and two thousand dollars of the principal, named in this paragraph, may be employed in building a monument for all my aforesaid relatives. The lawful authorities of Buxton are hereby authorized to carry into effect this clause of my will.

"*Fifth.* I also bequeath the sum of one thousand six hundred and twenty-five dollars to the Lombard University of the City of Galesburg, Illinois."

The will failed to appoint an executor. Letters of administration *cum testamento annexo* were first issued to the widow and afterwards, upon her resignation of her office as administratrix, letters were issued to the complainant.

The testator's widow is now dead, and it appears that the estate consists of real estate worth about $1,500 and personalty worth about $8,500, in addition to three promissory notes which were made by the Lombard University to the testator and which in the aggregate amount to $1,623.73. They bear interest at the rate of ten per cent. per annum, which interest was paid up to the date of the death of the widow. The university claims that the bequest of $1,625 to it was in performance of an agreement between it and the testator that if it would pay ten per cent. per annum on its three notes, which it might lawfully agree to do in Illinois, where the notes were made, that he would give the notes to the university upon the death of himself and his wife and the

university demands that the complainant shall deliver to it its notes in satisfaction of the legacy.

The complainant now asks direction (1) whether the legacies bequeathed by the will are charged upon the testator's real estate; (2) whether the notes of the Lombard University shall be surrendered to it in satisfaction of the legacy for $1,625, and (3) to whom the moneys contemplated by paragraphs 3 and 4 of the will shall be paid.

The next of kin and heirs at law of the testator claim that the third and fourth paragraphs of the will are void, because they are too vague and indefinite to be enforced and because they create perpetuities for uses not charitable.

The Oak Hill Cemetery Company claims that by the third paragraph of the will a valid trust was created in it.

There was no appearance for the Buxton cemetery.

The next of kin and heirs at law deny knowledge of the agreement alleged to have existed between the Lombard University and the testator. and by so doing put the complainant and the university to proof of the agreement. The testimony produced to prove the agreement is entirely hearsay and so unsatisfactory that it fails to accomplish its purpose. As the agreement is not established, no direction will be given with reference to it. If it does not exist, the plain duty of the administrator will be to collect the notes and pay the legacy.

The legacies contemplated by the third and fourth paragraphs of the will are of interest of funds of specified amounts, to be taken from the testator's "estate." No limit of time during which the interest is to be paid is fixed. The will does not even contemplate an ultimate gift of the funds from which the interest is to spring. The interest is payable indefinitely—forever. Such a gift of the produce of a fund directly or through an intervening trustee, is a gift of the fund itself. *Craft* v. *Executors of Snook, 2 Beas. 121; Gulick's Executor* v. *Gulick, 10 C. E. Gr. 324; S. C. on appeal, 12 C. E. Gr. 498; Huston* v. *Read, 5 Stew. Eq. 596; Post* v. *Rivers, 13 Stew. Eq. 21; Bishop* v. *McClelland, 17 Stew. Eq. 450; Lippincott* v. *Pancoast, 2 Dick. Ch. Rep. 26.* The principal funds established by the third and

fourth paragraphs are to come from the testator's "estate." The word "estate" is *genus generalissimum*, and includes all things real and personal (*per Lord Holt, 1 Salk. 236; Whittaker v. Whittaker, 13 Stew. Eq. 33, 37; Cook v. Lanning, 13 Stew. Eq. 369, 372*), and when legacies are directed to be paid out of the "estate" of a testator, and there is nothing to restrict the meaning of the word "estate" to personalty, the real estate is held to be charged with the legacies. *Cox v. Corkendall, 2 Beas. 138; Hunt v. Hunt, 4 Gray 190, 193; Jackson v. Housel, 17 Johns. Ch. 281.*

The meaning of the testator, then, was to give two funds of $5,000 each from his entire estate, real and personal, the income from which was to be perpetually used for indicated purposes. He did not expressly name the legatees of the fund he thus created, and, as I deem the legacies to be void for reasons hereafter given, it is not necessary to discuss the question who the intended legatees were. I will assume, for the purpose of presenting the points hereafter considered, that the testator meant that the cemetery companies should take the respective funds. And, in passing, I should say that under this assumption the office of the reference to the "lawful authorities of Vineland" and the "lawful authorities of Buxton" may properly be esteemed to be the appointment of visitors with power and authority, so far as the testator could bestow it, to inquire into and enforce the due observance of his trusts, those visitors to be the municipalities of Vineland and Buxton, by whatever corporate names they may be known and may have the right to act.

It is observed that, in each case, the trust was intended to be a perpetual one. That fact gives rise to the claim of the next of kin and heirs at law, that it is void because it is in contravention of the well-established rule against perpetuities. It is clear that neither trust is for a public charity, which ordinarily is not within the rule referred to, for neither extends farther than the establishment, preservation and improvement of private property, and hence the use contemplated cannot be esteemed a general public one. *Detwiller v. Hartman, 10 Stew. Eq. 347.*

It is suggested that the provision of $2,000 for a monument for the parents, sister and brothers of the testator in the Buxton cemetery is valid. The language of that provision is that $2,000 "*may* be employed" in building a monument. Such a provision is permissive, not imperative. It is a power that may never be exercised or may not be exercised within lives in being, at its execution, and twenty-one years. Such a power is bad under the rule against perpetuities. *Gray Perp. 306; 2 Perry Trusts § 383.*

Unless, then, there be something to relieve one or both of the trusts from the operation of this rule, they must be declared void.

It is urged that the true intent of the testator is, as I have assumed, that the legacies are to the Oak Hill and Buxton Cemetery Companies, and that at least the Oak Hill Cemetery Company is secured its legacy by the statute of March 29th, 1878, entitled "A supplement to an act entitled 'An act to authorize the incorporation of rural cemetery associations and regulate cemeteries,' approved April ninth, eighteen hundred and seventy-five," which, among other things, provides that

"any cemetery association within this state, existing under special statute or by virtue of an incorporation under the general statutes of which this is a supplement * * * may take and hold any property, real and personal, bequeathed and given, upon trust, to apply the incomes thereof under the direction of trustees or managers of such association for the improvement * * * of such cemetery * * * or of the repair, preservation * * * of any tomb, monument, grave-stone, fence, railing or other erection in and around any cemetery lot or plot * * * according to the terms of such grant, devise or bequest" *Rev Sup. p. 77 § 2.*

This statute, so far as it is useful upon the present point, was construed by Vice-Chancellor Van Fleet in *Moore's Executors* v. *Moore, 5 Dick. Ch. Rep. 554.* In that case an executor asked instruction whether he should pay a legacy bequeathed to a cemetery company for the perpetual care and ornamentation of the testator's burial lot in its cemetery. The doubt submitted by the executor was whether the gift was valid under the rule against perpetuities. It appeared that the legatee was one of the corporations

contemplated by the statute of 1878 to which I have referred. Commenting upon that portion of the statute which has been quoted, the vice-chancellor said : " No doubt can be entertained that the rule against perpetuities may be altered or abolished by the legislature.   *   *   *   The design of this statute, as I interpret it, was to abrogate the rule against perpetuities, so far as that rule applied to gifts made to cemetery corporations, and to make it lawful for such corporations to hold property, acquired by gift subject to a perpetual trust for certain designated purposes.   It plainly declares that it shall be lawful for such corporations to take and hold property, upon trust, according to the terms of the grant, devise or bequest by which the trust is created.   This language, understood in its ordinary sense, is broad enough to comprehend a perpetual trust."

I entirely agree with this construction.

In attempting to apply this statute to the present case, it is, in the first place, perceived that the Buxton Cemetery Company is a corporation of another state, and, therefore, not within the protection of the legislation.   The law is applicable only to certain cemetery companies created by or under the laws of this state and cannot avail the Buxton Cemetery Company.

In the next place, turning to the Oak Hill Cemetery Company, it appears, while the proofs show that company to be within the class of cemetery companies contemplated in the act of 1878, that the will considered took effect at the death of the testator, in September, 1875, more than two years before the enactment of 1878, and, hence, the question arises whether vested rights intervened before the passage of that law, which the law cannot affect.

The rule is, that where the time specified in a bequest is annexed to the payment only, as where a legacy is given, payable when the legatee reaches a certain age, the legacy vests immediately upon the testator's death, for it is a present gift of which the day of payment is postponed.   But where the time specified is annexed to the gift itself, as where the legacy is given to the legatee " at " twenty-one or " if " or " when " he attains that age, the legacy is contingent upon his reaching the desig-

nated age and does not vest until then. If he does not reach that age it never vests. *Gifford* v. *Thorne, 1 Stock. 702; Green* v. *Howell, 1 Vr. 326; S. C. on error, 2 Vr. 570; Montgomery* v. *Beatty, 6 C. E. Gr. 324; Herbert's Executors* v. *Post, 11 C. E. Gr. 281; S. C. on appeal, 12 C. E. Gr. 540; Thornton* v. *Roberts, 3 Stew. Eq. 476; Acken* v. *Osborn, 18 Stew. Eq. 380; S. C. on appeal, 1 Dick. Ch. Rep. 607.*

Applying this rule, it is perceived that the trusts contemplated by the will considered were to take effect upon the death of the testator's widow. That event was certain. Only the time of its happening, which is the time when the fund should be paid to the trusts, was uncertain. Under the rule, then, the legacies of the trust funds should have vested, if at all, at the death of the testator. Now, at that time both legacies were void under the rule against perpetuities, and the property which otherwise would have been devoted to their payment immediately vested, according to its kind, in the heirs at law or next of kin of the testator. *2 Redf. Wills 89.* Subsequently, and before the time when the legacies were payable, the Oak Hill Cemetery Company emerged from its disability and acquired capacity to take a bequest of the character considered. But it could not then take from the heirs at law and next of kin that which had absolutely vested in them and had become their property. In *White* v. *Howard, 46 N. Y. 144, 167,* a devise was made to the American Tract Society, which had been incorporated in 1841 by a charter which did not give it the right to take by devise, and, hence, the devise to it, under the laws of New York, was invalid. After the death of the testator, which occurred in 1863, the society's charter was amended so that it permitted the corporation to take by devise. The court held that, at the testator's death, the property vested in his heirs, the devise to the tract society being then void, and that it could not afterwards, in virtue of any legislation, be taken from those heirs and bestowed upon the tract society.

The principle underlying the decision of this question is so deeply rooted in constitutional right, and so plain, that it is unnecessary to further discuss it. Besides, the act of 1878 is not retrospective in its terms.

I would like to sustain the trusts that the testator endeavored to create, but I am convinced that it is impossible to do so.

The complainant will be directed in accordance with the views I have expressed.