That case arose under chapter 379 of the Laws of 1875, the eighth section of which provided:

"No lien, provided for in this act, shall bind the property therein described for a longer period than ninety days after the claim has been filed, unless an action be commenced within that time to enforce the same, and a notice of the pendency of such action filed with the clerk of the county, and an entry of the fact of such notice made on the lien docket."

This provision is not essentially different from that contained in section 6 of chapter 342 of the Laws of 1885, except as to the time within which the action is to be commenced, and the notice of its pendency filed. The omission to file the notice is not a defense to the action.

No error was committed in ordering a judgment of foreclosure in form to be entered against the property. As before stated, until this is done the claimant has no remedy on the bond. The recovery of a judgment by a claimant against the debtor for the amount of his claim would not entitle him to recover the debt from the obligors on the bond without the recovery of a judgment of foreclosure against the property. People v. Butler, 61 How. Pr. 274; Lawson v. Reilly, 13 Civil Proc. R. 290; Highton v. Dessau, (Com. Pl. N. Y.) 19 N. Y. Supp. 395; Scherrer v. Music Hall Co., (Com. Pl. N. Y.) 18 N. Y. Supp. 459. In the case last cited the general term of the common pleas said:

"The claimant, in order to establish a lien upon the property, must show his right, as against all other claimants, to payment from the fund subject to the liens,—viz. the moneys due from the owner to the contractor,—and must show that, after the satisfaction of all such claims as are entitled to priority, there is sufficient to satisfy his particular lien, (Lien Act, § 1; Gibson v. Lenano, 94 N. Y. 183;) and he must show the same facts and right in order to establish a lien upon the bond or deposit, and a right of action against the sureties upon the bond."

In so far as Bulkley v. Moses, (City Ct. Brook.) 23 N. Y. Supp. 125, and Heinlein v. Murphy, 3 Misc. Rep. 47, 22 N. Y. Supp. 713, are adverse to this view, they are overruled.

The judgment in this action carefully protected the rights of the owner and provided that it was in form only against his property, and it clearly constitutes no lien upon it. The judgment should be affirmed, with costs. All concur.

---

PARKER et al. v. BUTLER.

(Supreme Court, Special Term, New York County. November, 1893.)

1. DEVISE IN TRUST—CHANGE IN FORM OF TESTATOR'S OWNERSHIP.
Testator devised certain lands and contracts for the purchase of lands in West Virginia to trustees for certain purposes, and provided that such

property should not constitute part of the residuary estate. After making the will, testator conveyed an interest held by him in the G. tract of land in West Virginia to certain persons, who therefor executed a declaration of trust 'in favor of testator, and covenanted to make such conveyances as testator should direct. *Held*, that the conveyance of the G. tract, and the declaration of trust executed by the grantees, did not withdraw the proceeds of such tract from the devise in trust of the West Virginia lands.

2. EXECUTORS—PAYMENTS FOR TRUST ESTATE.

Testator was jointly interested with his brother in certain lands and land contracts. On the brother's death testator agreed to buy his interest from his heir, to be paid out of the proceeds of the lands, or in full at any time, without waiting for a sale of the lands. Afterwards he paid the price in full, but only a small part was from sales of land. After the agreement with his brother's heir, but before payment of the purchase money, testator made his will devising the lands and land contracts to trustees for certain purposes, and directed the trustees to pay out of the proceeds thereof so much of the sum which testator had agreed to pay his brother's heir "as shall then remain unpaid." *Held*, that the executors were not entitled to receive from the trustees the sum that testator paid his brother's heir, less the amount received by testator from sales of lands.

Action by Willard Parker and another, as executors of Willard Parker, deceased, against Benjamin F. Butler, as trustee under the will of said Willard Parker, deceased, for a construction of certain portions of the will. Judgment for defendant.

The sixth and eighth clauses of the will are as follows:

Sixth. As I am now owner of various lands and contracts for the purchase or sale of lands, leases, mortgages, and equitable interests and rights in and to lands, situated at West Virginia, and as I may hereafter acquire other such lands in said state before my death, and as I wish to make a special disposition of the same different from that which I hereafter make of my other estate: Now, therefore, I hereby give, devise, and bequeath all the property and estate, real and personal, above described, which I shall own or be entitled to dispose of at my death, unto my son-in-law, Benjamin F. Butler, of Scarsdale, Westchester county, and state of New York, as trustee, in and upon the following trusts and conditions; that is to say:

(1) In trust to sell the said lands in such lots or parcels, and either by auction, private sale, or in such other manner as he may think best, and on such terms and conditions, and with such covenants, either for assurance of title or other purposes, which covenants shall bind the said trust estate; and also in his discretion to let or demise the same for such periods of time, at such rents, and on such other terms and conditions, as he may think best, empowering him to make in such leases any covenants for renewal or for assurance of title which he may think proper. Also to collect the rents, issues, and income arising from such leases, or any other leases, herein devised; and also to collect the interest and principal of mortgages, and installments on land contracts herein devised or bequeathed, and also the proceeds of the land sold by him, and to apply the moneys received from the sources mentioned, or any of them, to the following purposes, that is to say: To the discharge of taxes and assessments constituting either in the present or future a lien or charge upon the said lands or landed estates or interests, or any parts or part of them, or the purchase of certificates or other tax titles to said lands, or any of them, or any parts or part thereof; to the discharge or purchase of any other liens or incumbrances or charges on said property or any parts or part of it; to the insurance of buildings or other constructions upon the said property, with power in his discretion to apply all proceeds of insurance to repairs of buildings damaged, or to the erection of new buildings, either on the same site or elsewhere, and for the same purpose or for other purposes; or to dispose of such proceeds as here-

inafter directed as to proceeds of sale. In trust also to apply in his discretion any money received by him, from whatever source, to the erection or repairs of buildings of any kind on any part or parts of my said property, if in the opinion of the trustee such erection shall then seem calculated to improve the value or rental of any part of the property; and also to the sinking of mines or construction of roads, bridges, railroads, or canals, whether by the trustee individually or by uniting with others whether unincorporated, incorporated, or under corporate associations, with power to subscribe, even in advance of funds received, for shares or interests in such associations, binding the trust estate by such subscription. Also to the purchase of adverse rights or claims to the said property, or any parts or part thereof. Also to the purchase of adjoining lands if in the opinion of the said trustees such purchase is calculated to improve the value or the rental of any parts or part of the said lands; and to any other purpose which, in the opinion of the said trustee, may be calculated to develop or improve the value or rental of the said property, or any part thereof. And in trust, further, for the purpose of raising money for any of the above purposes to which the said trustee is authorized to apply either income or proceeds of sale, to mortgage the said lands, or any part of them, from time to time, in such manner, and for such sums, as the said trustee shall think best. And if any surplus, whether of income or of proceeds of sale or of insurance, shall at any time or times remain after satisfying the above-mentioned purposes, and after providing for them in advance, if the trustee shall think it necessary or advisable to make such provision, then one-fifth of such surplus shall be paid over to my son Willard Parker, Junior, and the remainder shall be divided equally amongst my grandchildren who may be living at my decease. But if my granddaughter Margaret Stimson should die before me, then the share which would thus have gone to her shall be paid and given to her mother, Edith Stimson, if living. And I hereby authorize and empower the said trustee, at any time or times when he shall think it advisable, to set off in the same proportions the principal of the share or shares of one or more of the parties interested in the property held in trust under the foregoing provisions of this clause, and to execute proper instruments of conveyance or assignment to vest the title of such shares in such parties, so that they may hold and enjoy the same in severalty free and discharged from all future operation of the trust. And I hereby authorize and empower the said trustee to do all and every one of the acts for which the said lands and other property are hereinabove declared to be held in trust; but his action, whether under the trust or under any power contained herein, is intended to be subject entirely to his discretion, and not compulsory, and his decision as to such exercise is not to be questioned by the beneficiaries.

(2) And I hereby authorize my said trustee to resign said trust at any time when he shall desire to do so by executing under his hand and seal an instrument of conveyance or transfer of said trust property as may remain undisposed of to such person or persons as may be appointed by such of the parties interested in such remaining property as may have attained the age of twenty-one years, or to any person or persons who may upon his application in that behalf be appointed trustees or trustee in his place by any court, as hereinafter provided; and upon the execution and delivery of such deed, and acceptance of the trust by such new appointees, the said trustee shall be exonerated from any further duty or responsibility under said trust. And the said trustee may present his account for audit to such new appointee or appointees, and the settlement thereof by such new appointee or appointees shall be final and conclusive upon all parties interested in the trust property. And at any time or times before his transfer of the trust said trustee may have his accounts audited and settled by such of the beneficiaries as are of full age in connection with the father, or, if none, with the mother, or, if none, then with the guardian, of such as are minors; and such intermediate settlements shall be conclusive as to all matters embraced therein upon all persons interested in said trust fund. And if the said trustee shall for any cause become incompetent to execute the trust, I hereby authorize such of the beneficiaries interested in the prop-

erty held under the trust as may be of full age, and the father or mother or guardians of such of the beneficiaries as may be minors, to appoint a new trustee by an instrument in writing executed under their hands and seals in the manner required by the laws of West Virginia for the conveyance of real property; or I hereby authorize a new trustee to be appointed by any court of record either in West Virginia or in the state of New York on the application of any one or more of the beneficiaries, but such new trustee or trustees shall be a person nominated in writing by the beneficiaries who have attained their full age, or, if they do not so nominate, then such trustees may be nominated and appointed by the court before whom such application is made. And the trustee may also on his own application, or on that of any one interested, be discharged from the further execution of the trust by order of any court of record in West Virginia or in New York having jurisdiction over trust matters; but reasonable notice of the application must be given to the beneficiaries, not only by publications in one or more newspapers published in the city of New York, but by actual written notices, sent by mail to the address of such as may be of full age, and to that of the parents or guardians of such as may be minors, whose addresses are known to said trustees; and on such application the court may appoint a new trustee or trustees. But, if, on such application, a majority of the beneficiaries, including the parents or guardians of such as shall be minors, shall nominate a new trustee or trustees, such nominee shall be appointed by the court, unless legally incompetent to execute the trust. And the said trustee or trustees who may succeed to the said trust, whether by action of the existing trustee or of the court, shall succeed to all the powers, discretionary or otherwise, given to the trustee. And I hereby authorize and empower the said trustee to assent and agree to a partition of lands held by me in common with others, and to adjust and settle all equitable interests I have in lands held by others, as trustees for my benefit, or otherwise; and to compromise and settle all claims relating to any of the lands or other property hereby devised or bequeathed that I may have against other persons or that other persons may have against me. And I hereby authorize and empower the said trustee to execute all such deeds and instruments as may be requisite to carry into effect any of the trusts hereby created, or any of the powers herein given to him. And I hereby authorize and empower the said trustee, and any other trustee or trustees who may hereafter be substituted in his place, to deduct all expenses of executing the trusts, including compensation of agents, surveyors, clerks, and any other persons he may think proper to employ from time to time, or continuously, for the purpose; and also fees of experts and of counsel, and all extra legal expenses, and all traveling, advertising, and other expenses which he may have paid or incurred; and also a compensation for his own services of five per cent. on rents, two and one-half per cent. on proceeds of sales received and applied or paid over, out of the first moneys received, whether from income or proceeds of sale. And I hereby declare that my said trustee and his substitute or substitutes shall not be responsible for any loss or depreciation owing to mistake or want of judgment, or from cause other than willful negligence or dishonesty; and that he and they shall not be required to give bonds or security of any kind for the faithful execution of the duties of the trust.

Eighth. I direct my executors to divide into nine equal parts all the rest, residue, and remainder of my estate, real and personal, including therein the reversion after my said wife's death in the property in the fifth and seventh clauses of this will given to, or in trust for, her for life, but excluding therefrom the lands and other interests in property in West Virginia which are especially disposed of in the sixth clause of this will; and I declare that whenever the words "residuary estate" are used in this will they are intended to designate my estate, including and excluding the properties as in this clause designated.

Earl L. Stimson and Eustace Conway, for plaintiffs.

Butler, Stillman & Hubbard, (Adrian H. Joline and Willard Parker Butler, of counsel,) for defendant.

LAWRENCE, J.    This action is brought to obtain a construction of certain portions of the will and codicil of Dr. Willard Parker, deceased.    The testator died in the city of New York on the 25th of April, 1884.    On the 5th of January, 1883, he executed his will, and on the 11th of January, 1883, he executed a codicil thereto.    The will and codicil were duly probated on the 31st of May, 1884.    The testator, at the time of making his will and at the time of his death, was the owner of certain lands and interests in lands and contracts for the purchase of lands in the state of West Virginia.    In a portion of those lands the testator and his brother Grenville were jointly interested.    Grenville died before the testator, and on the 14th of February, 1882, the testator made a contract, which is referred to in the codicil, to purchase his brother's interest from his widow and daughter, and to pay therefor $18,000 and interest from that date, out of the first proceeds of sale of said lands, or to pay the purchase money in full at any time.    After the testator had executed his will and codicil, a question arose between him and Emily T. Parker, who was the sole heir and administratrix of his brother Grenville, her mother having in the mean time died, in relation to the rights of his brother's representative under said agreement.    Thereupon the testator paid $18,000 purchase money, and received a deed from Emily T. Parker on the 14th of May, 1883.    At that time he had received only a small part of the $18,000 from sales of the West Virginia property.    Among the West Virginia lands embraced or referred to in the contract and deed from Emily T. Parker to the testator, was an interest in what was known as the "Guyandotte Tract."    The testator, with his brother Grenville, had originally become entitled to an interest in that tract under an agreement made on the 9th day of October, 1872, between William H. Aspinwall and Abiel A. Low, of the first part, and Willard Parker and Grenville Parker, of the second part, under which it was agreed that the said Aspinwall and Low, having obtained a deed for said property, should for the present retain all the legal title and hold the one-third thereof in trust for the said Willard and Grenville Parker, their heirs and assigns, subject to certain conditions, not necessary to be mentioned.    On the 11th of December, 1883, Mr. Aspinwall and Grenville Parker having died, a deed was made by Mr. Low and the heirs and representatives of Mr. Aspinwall, in which deed Willard Parker joined, conveying the property to A. A. Low, John A. Aspinwall, and Benjamin F. Butler.    On the same day Messrs. Low, Aspinwall, and Butler executed a declaration of trust to Mr. Low, the heirs of Mr. Aspinwall, and Dr. Parker, in which the agreement of October 9, 1872, is recited, and the grantors covenanted and agreed to accept and hold said real estate, and all such right, title, and interest therein, as was vested in and held by the parties of the second part therein before and at the time of the execution of said deed of the parties of the second part to the parties of the first part, in trust for and to the only proper use, etc., of the parties of the second part,

their heirs and assigns forever, according to the right, title, and interest which they had respectively under the instrument above referred to. The parties of the first part further covenanted to make and execute in due form of law such conveyances in relation to the real estate as the parties of the second part, or a majority in interest of them, their heirs and assigns, may in writing direct. Benjamin F. Butler, the trustee named in the sixth clause of the will, died December 11, 1884, and his son, Benjamin F. Butler, the present defendant trustee, was appointed in his place, pursuant to the provisions of his grandfather's will.

It is sought in this action by the plaintiff to have two questions determined, viz.: First. Whether the proceeds of the sale of the Guyandotte tract of land, or the tract itself, so far as the interest in said proceeds and said tract of the testator are concerned, were withdrawn from the gift, devise, and bequest to Benjamin F. Butler in trust, as contained in the sixth clause of said will, by reason of and through the deed dated 11th day of December, 1883, executed by Dr. Parker and others to Abiel A. Low and others, and said declaration of trust, of the same date, executed by Abiel A. Low and others to Willard Parker and others; and, if so withdrawn, to whom said proceeds of sale are payable, the same being claimed both by said defendant, Benjamin F. Butler, as trustee, as belonging to the said trust under the said will, and by the plaintiffs as belonging to their residuary estate. Secondly. The court is asked to determine whether the sum of $18,000 and interest, mentioned in the said codicil, or so much thereof as the said testator had not received in his lifetime, after the execution of said codicil, from his entire West Virginia property, over and above the current expenses of maintaining the said property, is or is not a valid and just claim on the part of the plaintiffs, as such executors, against the defendant, Benjamin F. Butler, as trustee, under the sixth clause of said will, to be paid by him to the plaintiffs prior to his making any distribution to the beneficiaries of his said trust.

I am of the opinion, as to the first question, that the delivery of the deed and declaration of trust of the 11th day of December, 1883, did not take the Guyandotte tract out of the provisions of the sixth clause of the testator's will. The lands in question were not sold until January 6, 1890, and it appears from the evidence that, under section 9, of chapter 77, of the Amended Code of West Virginia, no conveyance or other act subsequent to the execution of a will shall, unless it be an act by which the will is revoked as provided in said statute, prevent its operation with respect to such interest in the estate comprised in the will as the testator may have power to dispose of by will at the time of his death. It is apparent, I think, from the provisions contained in the sixth clause of the will, that the testator designed to keep his interests, whether legal or equitable, in the West Virginia lands, entirely separate and distinct from his residuary estate. See sixth clause; and also the eighth clause of the will, by which latter clause, providing

for the distribution of his residuary estate, the testator excludes therefrom the lands and other interests in property in West Virginia, which are specially disposed of in the sixth clause of this will, and where he declares that whenever the words "'residuary estate' are used in this will they are intended to designate my estate, including and excluding the properties as in this clause designated." If we turn to the codicil, it will also be found that the testator declares that the property disposed of in the sixth clause of said will is intended to include, among other things, "all rights which I may have in or in relation to certain lands and premises situated in the state of West Virginia, which were formerly owned by me in common with my deceased brother, Grenville Parker," etc., "which his widow and surviving daughter have, by an instrument duly executed between us, agreed to sell and convey to me for the agreed price of eighteen thousand dollars." I think it clear that the testator did not intend that there should be a conversion of the lands into money by the deed and declaration of trust of December 11, 1883, (Read v. Williams, 125 N. Y. 571, 26 N. E. 730; White v. Howard, 46 N. Y. 144--162,) and that the doctrine of equitable conversion does not, therefore, apply. Even if such doctrine did apply, I think it clear from the provisions in the will and of the codicil that it was the intention of the testator that the proceeds arising from the sale of the Guyandotte lands should pass into the hands of the trustee appointed under the sixth clause of the will and be distributed under the trust. I am also of the opinion that under the terms of the codicil the executors are not entitled to receive from the trustee, under the sixth clause of the will, the sum of $18,000 and interest, or so much thereof as the testator had not received in his lifetime, after the execution of said codicil, from his entire West Virginia property, over and above the current expenses of maintaining the same. The codicil provides that the trustee named in the sixth clause of the will, after paying out of the proceeds of the sale of this trust property in said clause devised to him, such taxes or other charges or incumbrances as he may deem proper, etc., shall use and apply the next moneys received by him from the said trust property, whether from rents, proceeds of sale, or otherwise, in and towards the payment and satisfaction of said sum of $18,000, or so much thereof as shall then remain unpaid according to the provisions of the above mentioned agreement. At the time that the codicil was made, Dr. Parker was under a contract to Eliza A. Parker, the widow of his brother, and Emily T. Parker, his daughter, to pay out of the first moneys received by him from the sale and disposal of the lands mentioned therein the sum of $18,-000, etc., postponing any participation by himself as joint owner in any of said avails or proceeds of sale until the said sum of $18,000 is fully paid. It was further provided in the contract that Dr. Parker might, without waiting for a sale of the lands, have the right to make payment of the consideration money mentioned in the agreement, and that such payment should

have the same force and effect as if made from the avails and proceeds of said lands, etc. It appears that on the 14th of May, 1883, as differences had arisen between Dr. Parker and Miss Parker, (Mrs. Parker having died,) he paid to his niece the sum of $18,000, and took a deed of all her interest in the lands referred to in the sixth clause of his will and in the contract. Dr. Parker having availed himself of the option which was contained in the contract to make payment of the $18,000 before such an amount had been realized from the sale of the lands, it seems to me that it cannot be successfully contended that he intended to charge his West Virginia estate with the payment of that sum to his executors. As I read the codicil, it was only in the event that the $18,000, or a portion thereof, remained unpaid at the time of Dr. Parker's death, that the trustee was to devote the first moneys received by him from the proceeds of the sale of the lands after payment of taxes, assessments, and incumbrances to the payment of the amount due to his brother's heir. I discover no intention on his part to charge that sum upon the proceeds of the West Virginia lands for the benefit of his residuary estate. For these reasons I am of the opinion that the defendant is entitled to judgment, with costs. Settle findings on two days' notice.